JEROME v. McCARTER.

1. The amount of a supersedeas bond as well as the sufficiency of the security are matters to be determined by the judge below, under the provisions of the twenty-ninth rule.
2. The discretion thus exercised by him will not be interfered with by this court.

----

* The Morning Light, 2 Wallace, 560; Union Steamship Co. v. New York Steamship Co., 24 Howard, 313.

3. If, however, after the security has been accepted, the circumstances of the case, or of the parties, or of the sureties upon the bond have changed, so that security which at the time it was taken was "good and sufficient" does not continue to be so, this court, on proper application, may so adjudge and order as justice may require.

ON motion of *Mr. G. F. Edmunds*, to increase the amount of a bond given on appeal and for additional security. The case was thus:

McCarter, the holder of a third mortgage, given by the Lake Superior Ship Canal, Railroad, and Iron Company, on about 400,000 acres of lands—pine lands, hard-wood lands, iron lands, copper lands, and farming lands—in Michigan, filed a bill in the Circuit Court for the Eastern District of Michigan, to foreclose his mortgage. Subsequently to this the company was decreed bankrupt, and one Jerome and another having been appointed its assignees, they were brought in by supplemental bill. On the 15th of June, 1874, the complainant got a decree of foreclosure.

The decree directed the sale of the canal, corporate franchises, and two land grants, to pay $1,057,686, and also what might be due to one hundred and twenty bondholders whose debts were not included in the above amount.

The sale was to be made subject to prior liens of $1,500,000 and upwards (apparently about $2,000,000), so that with the decree of $1,057,686, the property, if sold, would, in order to pay all charges against it, have to produce $3,057,686, or at least $2,500,000. The prior incumbrances were carrying interest at the rate of 10 per cent. a year.

An appeal was soon afterwards applied for to Swayne, J., to operate as a supersedeas. A body of affidavits was produced on the side of the defendant, from men of business, men of science, and men of wealth, to show an immense value in the mortgaged property, that its value far exceeded the amount of the decree and all prior liens, taking these at their principal sums and adding all the interest that had already accrued or would accrue during the litigation, and moreover that the property, from the anticipation of finding new mines on it, was rising in value. A body of

affidavits, nearly or quite as large and from a similar class of persons, was produced to show the contrary; the highest value given to the lands by any of these being $2,500,000. After hearing and considering these affidavits, an appeal was allowed by Swayne, J., to operate as a supersedeas, and the security fixed at $10,000, with two persons, named Wells and Crosby, as sureties. An appeal bond was given accordingly.

There was no allegation in making the present motion, that there was any altered condition of the mortgaged property or of the sureties in the appeal bond. The case, however, was No. 655 on the calendar, the case last argued prior to the date of the motion having been No. 96, and it appearing that the present case would hardly, in regular course, come on to be heard for two years.

Affidavits by the same persons who had made them before, and affidavits by numerous other persons on both sides, were now produced and laid before the court; there being now, as before, vast differences in the estimates of the property mortgaged, and as to whether it would be found more valuable than it now was or not.

To understand the arguments in the case, it is necessary to advert to certain statutes and to the twentieth rule of this court.

The twenty-second section of the act of 1789,* confers upon this court the power to review the final judgments and decrees of the Circuit Court by means of a writ of error, and the judge who signs the citation is directed to take good and sufficient security from the plaintiff in error, " to answer all damages and costs if he fail to make his plea good."

The twenty-third section prescribes the mode by which this writ of error may operate as a supersedeas and stay execution, and when the writ so operates, this court is directed, when they affirm the judgment or decree, to adjudge to the respondent in error, "just damages for his delay, and single or double costs, at their discretion."

---

* 1 Stat. at Large, 85.

When the writ is not a supersedeas, an act of 12th December, 1794,* provides that the security shall only be to such an amount as, in the opinion of the justice signing the citation, may be sufficient to cover the costs.

In 1867,† this court promulgated its twenty-ninth rule, as follows:

"Supersedeas bonds in the Circuit Courts must be taken with good and sufficient security that the plaintiff in error or appellant shall prosecute his writ of appeal to effect and answer all damages and costs if he fail to make his plea good. Such indemnity, where the judgment or decree is for the recovery of money not otherwise secured, must be for the whole amount of the judgment or decree, including 'just damages for delay,' and costs and interest on the appeal. *But in all suits where the property in controversy necessarily follows the event of the suit,* as in real actions, replevin, *and in suits on mortgages ;* or where the property is in the custody of the marshal under admiralty process, as in case of capture or seizure; or where the proceeds thereof or a bond for the value thereof, is in the custody or control of the court, *indemnity in all such cases is only required in an amount sufficient to secure the sum recovered for the use or detention of the property, and the costs of the suit, and 'just damages for delay,' and costs and interest on the appeal.*"

*Messrs. G. F. Edmunds and A. Russell, in support of the motion :*

By the twenty-second section of the act of 1789, security is to be taken by the judge signing the citation that the plaintiff in error "answer all damages and costs, if he fail to make his plea good." From 1789 to 1867—the long term of seventy-eight years—the construction of this act of Congress was uniform, that the bond must be sufficient to secure the whole decree in case of its affirmance. Thus this court, by Story, J. (A. D. 1824), in *Catlett* v. *Brodie*,‡ declared the law to be.

Twenty-nine years later, in 1853, in *Stafford* v. *Union Bank,*§

---

\* 1 Stat. at Large, 404.      † 6 Wallace, v.
‡ 9 Wheaton, 553.      § 16 Howard, 140.

this court again declared, "*that the amount* of the bond given on the appeal must be the amount of the judgment on decree," *and that no discretion could be exercised by the judge taking the bond.* That case was a foreclosure, where the sum decreed was $65,000, and the judge had taken a bond in $10,000. The property was in the hands of a receiver, who had given bonds in $40,000, and the persons in actual custody of the property had also given bonds for its safe keeping in $80,000. The allegation of hardship was set up there, as doubtless it will be here. But this court said that the hardship was more imaginary than real, and that the act of Congress was "mandatory," and that this court must comply with it.

The year after the last decision, in 1854, the appellant, Stafford, having failed to file the bond called for by the decision of this court, and the judge below still refusing to execute the decree, the court awarded a peremptory mandamus,* and a second affirmance is found in *Stafford* v. *Canal Company.*†

Fourteen years later, in 1867, the court promulgated its rule number twenty-nine, declaring, that where the property in controversy necessarily follows the event of the suit, as in suits on mortgages, indemnity is only required, on appeal, in an amount sufficient to secure the costs of the suit, just damages for delay, and costs and interest on the appeal.

It is apparent, that while the act of Congress, regulating the subject of security on appeal, remains unrepealed, the court can make no rule contravening the statute. The power of the court is necessarily limited to the giving of a construction to the statute. As was observed in *Stafford* v. *Union Bank*, already cited, the act is "mandatory," leaving no discretion. The rule, then, can be sustained only as a construction of the statute. But how can the court construe a statute by a rule? Must not the construction be made in the exercise of appellate power in a case between party and party, arising under the Constitution and laws? This rule

---

* Same Case, 17 Id. 275.                              † Ib. 283.

operates to reverse the decisions of the court above referred to by declaring that the security shall not be for the face of the decree, but for damages for delay, interest, and costs. This rule also *adds to* the statute by giving a discretionary amount for delay. We submit that the rule was improvidently adopted.

But if the rule is valid and is adhered to, it is mandatory on the judge taking the security, and establishes a minimum, below which he cannot fix the security, *i. e.*, *interest on the appeal*, &c. In this case, it is ten per cent. on $3,000,000 for at least two, and probably three years; from $600,000 to $900,000. And to this should be added damages for delay and costs. The amount actually fixed ($10,000) would not pay the interest accruing while the clerk was engaged in preparing the transcript.

That a discretion exists in *this* court to diminish, was decided in *Rubber Company* v. *Goodyear*,* where the court did actually diminish it. The right of *this* court to review and modify the action of the court below, was a point in the case solemnly adjudged.

In *French* v. *Shoemaker*,† the most recent decision, the rule was reiterated. Clifford, J., in delivering the opinion of the court, says:

"The question of sufficiency must be determined in the first instance by the judge who signs the citation, but after the allowance of the appeal, that question as well as every other in the cause becomes cognizable here. It is, therefore, matter of discretion with the court to increase or diminish the amount of the bond, and to require additional sureties or otherwise as justice may require."

However, neither of these cases was a case of foreclosure, and the latter portion of the rule fixing "*interest on the appeal*," &c., absolutely, as the amount of the bond in such cases, does not appear to have been passed upon by this court.

If then the court shall hold that discretion does exist in

---

* 6 Wallace, 153, 156.                    † 12 Id. 99.

foreclosure cases, we call attention to the affidavits and other papers filed in support of the motion, in regard to the value of the mortgaged property. These affidavits show the value to be less than the amount of incumbrances found by the court below.

Nothing has been done in the bankruptcy of the corporation subsequent to the adjudication two years ago. We may properly infer that the adjudication was procured merely to cause delay and embarrassment in the foreclosure proceedings, and not in good faith for the administration of the mortgaged property, which is all the property possessed by the bankrupt corporation.

The cause will stand at least two years on the docket before it can be reached, and the certain increase of the mortgage debt in this cause and of the prior incumbrances, by interest, will be about $600,000.

The prospect of any rise in the property to meet this certain increase of the debt is conjectural, resting upon the chance of a discovery of more valuable ores, &c.

The so-called "*indemnity*" to the appellee is at least sixty times too small.

*Messrs. P. Phillips, M. H. Carpenter, and W. P. Wells, contra:*

1. Until the determination of the cause, the appellants stand upon a supersedeas bond, duly approved by the judge who signed the citation, in strict compliance with the requirements of the twenty-third section.

The pretence now set up by the appellee is that, admitting all this to be true, the statutory right thus acquired by the appellants to a supersedeas shall not be maintained, without the appellants enter into a new bond in another amount and with other securities, now to be prescribed by this court.

The duty of taking the bond is, under the act of 1789, conferred on the judge below. It involves the exercise of discretion. To fix the amount, there must be an estimate of the damages, and what these may be, must have regard to the nature of the litigation.

The statute confers a power on the judge signing the citation; *he* is to take a certain security. It gives also a power to this court, on the same subject-matter, to wit: to adjudge "just damages for delay, and single or double costs." The respondent is thus provided with these two remedies for. redress, when his decree is affirmed. But the statute nowhere provides that the power conferred on the judge below may be reviewed by the court. Nor is such a review at all involved in the exercise of the appellate power conferred by the twenty-second section, which authorizes the court to re-examine the judgment or decree, and reverse or affirm the same.

Again, if we are correct in saying that the judge below, in judging the solvency of the sureties, and of the sufficiency of the amount, exercises a discretion, then by the repeated decisions of the court, his acts cannot be reviewed by the appellate tribunal.

If the judge below has acted in conformity to law, the party is entitled to his supersedeas, and it must stand. If, on the other hand, there is a fixed and arbitrary rule, as contended for by the mover, and the judge has violated this rule, then the bond taken is inoperative as a supersedeas. In such a case the party is entitled to his execution; and if the judge below should refuse to issue it, he would fail in a duty imposed on him by law, and a mandamus would compel him to execute the decree. This was the precise case of *Stafford* v. *Union Bank,* in which the mandamus directed the issue of an execution.

It is to be observed that the application to reform the bond is not based upon any altered condition either of the sureties or of the property. The affidavits now used are as to. the value of the property at the time when the judge below made his examination as to the fact, by testimony of witnesses, in presence of the mover. Having failed to impress the judge with his view of the matter, the effort has been adjourned into this court, so that on a second consideration he may have another chance of success.

It would seem from these considerations, independent of

adjudication, that the action of the judge below is conclusive as to the sufficiency of the bond.

When a party applies for a supersedeas and offers security, and the judge refuses on the ground that in his opinion the sureties are not solvent, nor the amount adequate, could the court award the supersedeas, or issue a mandamus?

In *Black* v. *Zacharie*,* the judge had taken a bond and allowed a supersedeas, but being subsequently satisfied that the security "was not sufficient for a writ of supersedeas," he set aside the previous order. In this court a supersedeas was applied for on a showing that the bond was sufficient. Story, J., in delivering the unanimous opinion of the court, overruled the motion, on the ground that "the judges of the Circuit Court were the sole and exclusive judges what security should be taken for that purpose" (to wit, a supersedeas). This is a case where the judge decided that the bond was insufficient, and this was held to be conclusive. Is there any principle which would hold that a judgment of sufficiency is not equally conclusive?

But it must be admitted that these views and this decision are not reconcilable with other decisions of the court.

Thus in *Stafford* v. *Union Bank* the mandamus was issued on the ground that the bond was insufficient.

The *Rubber Company* v. *Goodyear* did undoubtedly act on the power in this court after the allowance of the appeal to take cognizance of the sufficiency of the bail; and in *French* v. *Shoemaker* the right was asserted by the judge who gave the opinion as a thing established. As to the former case, it does not appear that the views here urged were presented by argument at the bar. And what was said in the latter was extrajudicial and irrelative to the points in issue, and of course of no value.

When the doctrine now sought to be enforced was stated in *Stafford* v. *Union Bank*, it was a mere suggestion of Mc-Lean, J., for it was decided that no motion could be made in the cause, because the return day had not arrived. Cat-

---

* 3 Howard, 495.

ron, J., would not agree to the opinion of the majority "advising the appellees what course to pursue against the district judge, because opposed to a doctrine attempting to settle so grave a matter of practice."*

2. The twenty-ninth rule is assailed as *ultra vires.* . Of course, no rule could be adopted in violation of an act of Congress. But the act of 1789 does not define the amount of the security. It requires it to be sufficient to cover the damages and costs. What these are is the subject of judicial construction.

In *Roberts* v. *Cooper,*† decided in 1856, where the bond was for $1000, and an application was made to increase it to $25,000, on a showing that a loss would accrue to the mining company to that amount by reason of the supersedeas, and that it was entitled to indemnity for "all damage" it might sustain, the court denied the motion, saying that no precedent had been or could be cited to sustain it, and that in construing the act of 1789, regard must be had to the *nature of the action.*

Here nothing was recovered for the use and detention of the property.

3. The appellants in this court are the assignees in bankruptcy of the mortgagor corporation. The amount found due by the decree cannot be enforced against them. Their supersedeas of the decree could in no event make them liable for more than the detention of the property pending the litigation, and there is no showing as to what this damage would be, assuming that the decree vested the complainant with the right of possession. This, however, is not the case. The decree is for a sale of the property. If the mortgagee had brought his action of ejectment and recovered a judgment for possession, and now claimed that the bond should be sufficient to cover the damages for detention pending the controversy, it would be the case of *Roberts* v. *Cooper, supra,* in which the court held there was no precedent for such a motion.

* 16 Howard, 141.        † 19 Id. 374.

In conclusion, we submit that whether the court accept the estimate made by the appellee's affidavits or those of the appellants, as to the value of the lands, it can in no wise affect the present application. The appellants are not bound to pay the money found due by the decree, and in claiming the supersedeas they cannot be held responsible for the loss of interest on such amount. Representing a large constituency of unprotected creditors of the company, and made a party defendant to the complainant's bill, they aver that the decree is manifestly injurious to the creditors and is contrary to law. The statute confers the right of appeal which they have exercised, and they are entitled to the judgment of this court on their plaint. The justice who rendered the decree has fully recognized the right of appellants to have it reviewed, and has perfected the appeal by approving the bond. To increase this bond as is now asked for would be an act of great hardship, and tantamount to a denial of the right of appeal, as of course the assignees could not give the security demanded. In no case can the appellant be required to give a bond to secure the payment of any sum which can never be adjudged against him. And it is clear that in this case the appellants, assignees in bankruptcy, cannot be required or be adjudged to pay any sum which this bond, $10,000, will not secure.

4. Assuming that this court will review the action of the judge who took the bond, it becomes necessary to enter upon an inquiry upon the affidavits, in respect to the value of the property covered by the decree.

[The learned counsel then reviewed the affidavits against the motion and submitted that it was established by them that if the decree in favor of the appellee was finally affirmed there was an estate large enough to pay all liens, with just damages for delay and interest and leave a large surplus for the now impoverished corporation and its unsecured creditors, whose interests would be sacrificed if the motion to increase the bond was granted, and their right of appeal made ineffectual.]

The CHIEF JUSTICE delivered the opinion of the court

This is a bill filed by a junior mortgagee of the Lake Superior Ship-Canal, Railroad and Iron Company against the company, a bankrupt, and its assignees in bankruptcy, for the foreclosure of his mortgage and a sale of the mortgaged property, subject to certain prior incumbrances. The decree appealed from ordered the payment of $1,057,686 to the complainant by the company or the assignees, and in default of such payment, the sale of the mortgaged property, subject to an incumbrance thereon of $1,500,000 and upwards. From this decree both the company and the assignees have appealed. The justice who granted the appeal and signed the citation accepted the supersedeas bond in the sum of $10,000. The appellee now moves to increase the amount of the bond and require additional sureties.

The twenty-second section of the Judiciary act of 1789 provides that every justice or judge signing a citation or any writ of error shall take good and sufficient security that the plaintiff shall prosecute his writ of error to effect and answer all damages and costs if he fail to make his plea good. The twenty-third section provides that if the judgment or decree is affirmed upon the writ of error, the court shall adjudge and decree to the respondent in error just damages for his delay, and single or double costs, at its discretion.* The act of 1803† provides that appeals shall be subject to the same rules, regulations, and restrictions as are prescribed in cases of writs of error.

Under the act of 1789 the amount of the security to be taken is left to the discretion of the judge or justice accepting it. The statute is satisfied if in his opinion the security is " good and sufficient."

Doubts having arisen as to the extent of the security to be required where there was no supersedeas or stay of execution, an act was passed directing that in such cases the amount should be such as in the opinion of the judge would be sufficient to answer all such costs as upon the affirmance

---

* 1 Stat. at Large, 85.          † 2 Id. 244.

of the judgment or decree might be adjudged or decreed to the respondent in error.*

In ·Catlett v. Brodie,† decided in 1824, this court held that in cases where the writ of error operated as a supersedeas, the security *ought* to be sufficient to secure the whole amount of the judgment. . Mr. Justice Story, in delivering the opinion of the court, said, " It has been supposed at the argument that the act meant only to provide for such damages and costs as the court should adjudge for the delay.  But our opinion is that this is not the true interpretation of the language. The word ' damages' is here used not as descriptive of the nature of the claim upon which the original judgment is founded, but as descriptive of the indemnity which the defendant is entitled to if the judgment is affirmed.  Whatever losses he may sustain by the judgment's not being satisfied and paid after the affirmance, these are the damages which he has sustained and for which the bond ought to give good and sufficient security."  Accordingly it was ordered that the suit stand dismissed unless security should be given to an amount sufficient to secure the whole judgment.

That was a judgment in an action at law for the recovery of money not otherwise secured, and the decision established a rule of practice for that class of cases.  Afterwards, in Stafford v. Union Bank,‡ decided in 1853, the court with one dissenting judge, held that a supersedeas which had been allowed upon an appeal from a decree for the foreclosure of a mortgage on slaves should be vacated unless a bond was given which would secure the payment of the decree.  Mr. Justice McLean, who delivered the opinion of the court, after referring to the case of Catlett v. Brodie, said, " If this construction of the statute be adhered to, the amount of the bond given on the appeal must be the amount of the judgment or decree.  There is no discretion to be exercised by the judge taking the bond where the appeal or writ of error is to operate as a supersedeas."  Thus the rule which had been adopted in respect to judgments at law was extended

---

* 1 Stat. at Large, 404.      † 9 Wheaton, 553.      ‡ 16 Howard, 139.

to decrees in chancery. It was a rule controlling to some extent the discretion of the judge in such cases, and to be observed so long as it continued in force.

It did continue until the case of *Rubber Company* v. *Goodyear*,* decided in 1867, and the adoption at the same time by the court of the present rule twenty-nine. That rule provides that where the judgment or decree is for the recovery of money not otherwise secured, the security must be for the whole amount of the judgment or decree, including just damages for delay, and costs and interest on the appeal; but in all cases where the property in controversy necessarily follows the event of the suit, as in real actions, replevin, and in suits on mortgages; or where the property is in the custody of the marshal under admiralty process, as in case of capture or seizure; or where the proceeds thereof, or a bond for the value thereof, is in the custody of the court, indemnity in all such cases is only required in an amount sufficient to secure the sum recovered for the use and detention of the property, and the costs of the suit, and just damages for the delay and costs and interest on the appeal. Such was the established rule of practice under the act when the bond now in question was taken. To some extent the old practice had been changed. The act itself remained the same, but experience had shown that the rules which had been adopted to give it effect were not suited to all the cases arising under it, and the new rule was made for the better adaptation of the practice to the protection of the rights of litigants.

This is a suit on a mortgage and, therefore, under this rule, a case in which the judge who signs the citation is called upon to determine what amount of security will be sufficient to secure the amount to be recovered for the use and detention of the property, and the costs of the suit, and just damages for the delay and costs and interest on the appeal. All this, by the rule, is left to his discretion.

In *Black* v. *Zacharie*,† it was held that in such a case the

---

* 6 Wallace, 156.                              † 3 Howard, 495

justice taking the security was the sole and exclusive judge of what it should be. Since then, in *Rubber Company* v. *Goodyear*, and *French* v. *Shoemaker*,* remarks have been made by judges announcing the opinion of the court which, if considered by themselves, would seem to indicate that this discretion could be controlled here upon an appropriate motion. The precise point involved in this case was not, however, before the court for consideration in either of those, and we think was not decided. We all agree that if, after the security has been accepted, the circumstances of the case, or of the parties, or of the sureties upon the bond have changed, so that security which, at the time it was taken, was " good and sufficient," does not continue to be so, this court may, upon a proper application, so adjudge and order as justice may require. But upon facts existing at the time the security was accepted, the action of the justice within the statute and within the rules of practice adopted for his guidance is final. And we will presume that when he acted every fact was presented to him that could have been. So, while we agree that in a proper case, after an appeal or writ of error taken here, this court may interfere and require additional security upon a supersedeas, it will not attempt to direct or control the discretion of a judge or justice in respect to a case as it existed when he was called upon to act, except by the establishment of rules of practice. If we can be called upon to inquire into the action of the justice in respect to the amount of the security required, we may as to the pecuniary responsibility of the sureties at the time they were accepted.

We understand the counsel for the appellee to contend, however, that in this case the justice did not act within the established rule, and that on this account we may review his action. The claim is, that the rule requires indemnity for interest upon the appeal, and this is construed to mean that the security must be such as to secure the payment of all the accumulation of interest upon the mortgage indebted-

---

* 12 Howard, 99.

ness pending the appeal and supersedeas. This we think is not the requirement of the rule. The object is to provide indemnity for loss by the accumulation of interest consequent upon the appeal, not for the payment of the interest. What the loss is likely to be depends upon the facts. As to this the justice, after consideration of the case, must determine.

In this case there can be no loss to the appellee if, as is contended by the appellants, the value of the mortgage security is sufficient to pay all the incumbrances, with accruing interest, when a decree of affirmance shall be rendered upon the appeal. Neither can there be if, as is contended by the appellee, the value of the property is much less than the amount of the prior incumbrances. If, upon the case made by him, the property depreciates in value during the continuance of the appeal, he will suffer no loss, because if sold now, upon his theory, he would receive nothing. Not being worth as much as the amount of the prior incumbrances, it is not to be supposed that a purchaser can be found to take it at a price that would yield anything to apply on his debt. The appellee may lose the opportunity of bidding in the property at a reduced price and speculating upon its rise, but the loss of such profits is not recognized by the court as legitimate " damages for the delay." In either view of the case, therefore, a judge would be justified in accepting a bond for a comparatively small amount.

There is another consideration which will justify the action of the judge under the rule. As has been seen, the suit is brought for the foreclosure of a mortgage. The debtor is a bankrupt corporation. Its whole property, including its corporate franchises, has passed to its assignees in bankruptcy. It is in no condition to accumulate property which can be subjected to the payment of its debts. It is, to all intents and purposes, dead. No damage can result, therefore, from the appeal by reason of the delay in obtaining an execution against the company under the provisions of rule ninety-two, regulating the practice in courts of equity, for the collection of any balance that may remain due to the

Statement of the case.

complainant upon the mortgage debt after the security is exhausted. If the company were not in bankruptcy the pendency of this suit would not prevent an action at law to recover the debt from other property pending the appeal. For these reasons a judge, in the exercise of a reasonable discretion, might properly accept security less than would be sufficient to insure the payment of accumulating interest, even upon an appeal by the corporation itself.

But it is apparent that the corporation is only a nominal party to this appeal. The real parties in interest are the assignees. The complainant is a creditor of the estate. Upon proof of his claim he will be entitled to receive his dividend with the other creditors. The accumulated interest will participate in this dividend as well as the principal of his debt. He has, therefore, without any further security, all the indemnity which the assignees can give him without they or their sureties assume personal responsibility.

All these facts were proper for the consideration of the judge when he determined upon the amount of security necessary to indemnify the appellee against loss by the appeal. We think, therefore, upon the case made, the action of the justice approving the bond is conclusive.

MOTION DENIED