HUDSON CITY SAVINGS BANK, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. HAMPTON GARDENS LTD., A LIMITED PARTNERSHIP, DEFENDANT-APPELLANT, AND GROSSMAN, BROWN, WEINBERG & LAWSON, A PROFESSIONAL CORPORATION AS AGENT FOR THE LIMITED PARTNERS OF PLYMOUTH ASSOCIATES, LTD.; SHORE NATIONAL BANK; HOWELL WOODWORK, INC.; THE LEVEL LINE, INC. AND STATE OF NEW JERSEY, DEFENDANTS.

GROSSMAN, BROWN, WEINBERG & LAWSON, A PROFESSIONAL CORPORATION, AS AGENT FOR THE LIMITED PARTNERS OF PLYMOUTH ASSOCIATES, LTD., PLAINTIFF, v. HAMPTON GARDENS, LTD., A LIMITED PARTNERSHIP, DEFENDANT.

Argued October 5, 1981—Decided December 17, 1981.

*Leon J. Sokol* argued the cause for appellant (*Greenstone & Sokol,* attorneys).

*James G. Lepis* argued the cause for respondent (*Lepis, Lepis & Curley* and *Dieffenbach, Witt & Birchby,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

We are called upon to decide whether a mortgagee may recover on a supersedeas bond the interest accruing during an unsuccessful appeal by the mortgagor of a foreclosure judgment. This question is to be resolved under the circumstances of this case, where the fair market value of the property purchased by the mortgagee for a nominal amount at a sheriff's sale is probably greater than the mortgage debt owed to the mortgagee and the surplus would have satisfied, in whole or in part, the interest accrued subsequent to the foreclosure judgment.

The facts are not in dispute. In 1974, the defendant Hampton Gardens, Ltd. purchased an 80 unit, two-story garden apartment complex located in Toms River, New Jersey, either assuming or subject to an existing first mortgage owned by the plaintiff Hudson City Savings Bank. The plaintiff declared a default in July 1976, went into possession and started foreclosure proceedings. The Superior Court, Chancery Division, entered a foreclosure judgment in favor of the plaintiff on October 11, 1977. The judgment recited the mortgage indebtedness of $983,161.19. It ordered that the mortgaged property be sold and the proceeds be applied to satisfy the debt, costs, counsel fees and interest

from September 15, 1977. Any surplus from the sale was to be deposited with the clerk of the court.

The defendant appealed and applied for a stay of the sale pending appeal. The trial court granted the stay on condition that defendant post a supersedeas bond for $75,000 "in conformity with the Court Rules [R.2:9–5 and R.2:9–6] in such case made and provided to secure interest, appellant [sic] costs, counsel fees, and against any losses plaintiff may sustain from its possession of the subject premises." The defendant thereupon posted a bond for $75,000.[1]

The Appellate Division affirmed the judgment of foreclosure and the defendant's petition for certification was denied. 81 N.J. 41 (1979). As the sole bidder at the sheriff's sale on April 10, 1979, plaintiff purchased the property for the nominal amount of $100. After the sale, plaintiff moved to recover the $75,000 that had been posted as a supersedeas bond on the grounds that the taxed costs on appeal were $865 and that accrued interest on the amount of the original decree at the legal rate of 8% from the date of judgment in 1977 to May 8, 1979 [2] was $129,293.11. The defendant argued that plaintiff was not entitled to recover on the bond because the value of the property, which the bank had allegedly contracted to sell for $1,125,000, exceeded the sum of the mortgage debt plus accumu-

---

[1]The bond that was filed did not conform to R.2:9–6(a). The bond was in the form of security for a money judgment. It provided for payment of a $75,000 judgment together with interest and costs. The rule requires that in a mortgage foreclosure the bond be fixed in an amount to secure damages as may be recovered for use and detention of the property, trial and appellate costs, and interest. The parties have not raised any issue with respect to the form of the bond and we have considered the bond as having not entirely departed from the rule, insofar as interest during the appeal, costs, and use and detention of the property pending appeal are concerned. See *Omaha Hotel Co. v. Kountze*, 107 *U.S.* 378, 2 *S.Ct.* 911, 27 *L.Ed.* 609 (1883); *Martin v. Clarke*, 105 *F.2d* 685 (7th Cir. 1939).

[2]The bidder was permitted to make payment four weeks after the sale.

lated interest. Therefore, the plaintiff had suffered no loss of interest as a result of the delay engendered by the appeal.

The trial court granted plaintiff's motion to collect $75,000 on the bond because the calculated interest exceeded that amount. The defendant appealed and the Appellate Division affirmed in an unreported opinion. We granted plaintiff's petition for certification, 85 *N.J.* 486 (1981), and now reverse.

■ The supersedeas bond serves as a device to protect a party who has been successful at trial but has been forestalled from proceeding during an appeal. The bond's necessary terms and conditions are provided by the Rules Governing the Courts. Two rules apply to a bond posted pending an appeal of a foreclosure judgment. *R.*2:9–5 provides in part that a judgment adjudicating "the rights or liabilities of parties in respect of property which is the subject of an appeal or certification proceedings shall be stayed only upon the posting of a bond pursuant to *R.*2:9–6 or a cash deposit" unless the court otherwise orders on good cause shown. *R.*2:9–6(a) states that "[w]hen the judgment determines the disposition of the property in controversy . . . the amount of the supersedeas bond shall be fixed at such sum only as will secure the damages recovered for the use and detention of the property, trial and appellate costs, and interest."

These rules have remained substantially intact since their initial adoption in 1948. See Rules 1:2–11 and 1:2–13 (effective September 15, 1948); *R.R.* 1:4–7 and *R.R.* 1:4–8 (1953). Their previous history is instructive in determining their purpose.

The original rule was modeled after the then existing *Fed.R. Civ.P.* 73(d), which codified the practice that had been fashioned by prior case law. 9 J. Moore, *Federal Practice* ¶ 208.06(2) (2d ed. 1980). That case law was superimposed upon the federal statutory framework governing appeals. We therefore look to federal statutory case law for guidance in resolving the issue presented.

The twenty-second and twenty-third sections of the Judiciary Act of 1789, 1 *Stat.* 84–85, provided that when a judge signed a writ of error permitting an appeal there was to be fixed "good and sufficient security" for "all damages and costs," and upon affirmance the court in its discretion would determine just damages for the delay and single or double costs.[3] The Supreme Court subsequently defined what constituted good and sufficient security. In *Catlett v. Brodie*, 22 *U.S.* (9 Wheat.) 553, 554, 6 *L.Ed.* 158, 159 (1824), the Court held that the security should be sufficient to cover the entire amount of a money judgment. The Court wrote: "Whatever losses [the respondent] may sustain by the judgment's not being satisfied and paid, after the affirmance, these are the damages which he has sustained, and for which the bond ought to give good and sufficient security." Thereafter, the Supreme Court in 1867 adopted Rule 32 which provided that when the judgment determined the disposition of the property in controversy, as in replevin and in suits on mortgages, then the security was to be fixed "in an amount sufficient to secure the sum recovered for the use or detention of the property, and the costs of the suit, and 'just damages for delay', and costs and interest on the appeal." 73 *U.S.* (6 Wall.) v (1867).[4]

---

[3] For English predecessors see statute of 3 *James* I, c.i; 13 Car. 2, c.2; 16 & 17 Car. 2, c.8. See also L.Elmer, *A Digest of the Laws of New Jersey*, 159–160 (1838).

For the subsequent history of § 22 of the 1789 Judiciary Act see 1 *Stat.* 404 (1794), 12 *Stat.* 657 (1863), 15 *Stat.* 226 (1868) and 28 *U.S.C.* § 869 (1946). For the subsequent history of § 23 of the 1789 Act see 17 *Stat.* 198 (1872) and 28 *U.S.C.* § 874 (1946). Both 28 *U.S.C.* § 869 and § 874 were repealed by the 1948 Judicial Code, 28 *U.S.C.* § 1 *et seq.* (1948).

[4] Rule 32 has been revised and renumbered by the Court from time to time. See *Sup.Ct.R.* 29, 108 *U.S.* 573 (1884); *Sup.Ct.R.* 33(2), 266 *U.S.* 653, 678 (1925); *Sup.Ct.R.* 36(2), 275 *U.S.* 595, 621 (1928); *Sup.Ct.R.* 18(1), 346 *U.S.* 943, 966 (1954), and current *Sup.Ct.R.* 44.2 (eff. June 30, 1980). The provisions of *Sup.Ct.R.* 44.2 are substantially similar to former *Fed.R.Civ.P.* 73(d), which was abrogated in 1968 when the Supreme Court promulgated the Federal Rules of Appellate Practice. 43 *F.R.D.* 61, 115–116 (1967). Although

■ Interest on the appeal did not refer to the accumulation of interest on the indebtedness, but to interest on the judgment. The Court explained in *Jerome v. McCarter*, 88 *U.S.* (21 Wall.) 17, 32, 22 *L.Ed.* 515, 517 (1874), that the security was to provide "indemnity for loss" of interest "consequent upon the appeal, not for the payment of the interest." It has been the established practice in New Jersey that after foreclosure, interest runs at the legal rate and not at the rate stated in the bond or mortgage. *Hoover Steel Ball Co. v. Schaefer Ball Bearing Co.*, 90 *N.J. Eq.* 515 (Ch. 1919); *Deshler v. Holmes*, 44 *N.J. Eq.* 581 (E. & A. 1888). See also *Wilson v. Marsh*, 13 *N.J. Eq.* 289 (Ch. 1861).

The Supreme Court expressed the view that the underlying purpose of the supersedeas bond was to protect the mortgagee from loss due to an appeal. In *Jerome v. McCarter*, a second mortgagee obtained a judgment of foreclosure. The amount due was in excess of $1,000,000. However, the property was subject to a prior encumbrance of more than $1,500,000. The second mortgagee claimed that a $10,000 supersedeas bond fixed by the district court was inadequate. The Supreme Court rejected this contention. The Court stated that the mortgagee could not suffer a loss based on the circumstances existing when the amount of the bond was fixed. If the value of the property was less than the amount due under the first mortgage as the mortgagee claimed, there would be no equity to be applied toward the second mortgage. Similarly, if the property depreciated in value pending the appeal, the mortgagee would suffer no loss. The mortgagee contended it would lose the opportunity to bid the property in at a reduced price and speculate upon its rise. The Court refused to recognize such a loss as legitimate

its provisions were not transferred to the Appellate Rules, the substance of *Fed.R.Civ.P.* 73(d) retains vitality inasmuch as it had simply codified judicial practice. *Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 636 *F.2d* 755, 759 (D.C. Cir. 1980); *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 *F.2d* 1189 (5th Cir. 1979).

damages for delay. On the other hand, if, as the mortgagor claimed, the mortgage security would be sufficient to pay all the indebtedness with accruing interest when the appeal was decided, the mortgagee also would not incur a loss. The Court noted, however, that the amount of the bond could be modified if conditions changed during the appeal and the security obtained was no longer adequate.

The concept that the unsuccessful mortgagor may be liable on the supersedeas bond only for the loss occasioned by the delay is illustrated in *Board of Supervisors v. Kennicott*, 103 *U.S.* 554, 26 *L.Ed.* 486 (1881). A $40,000 supersedeas bond was posted in connection with a mortgagor's appeal of a foreclosure action. After the judgment was affirmed, the successful mortgagee sued on the bond asserting damages including interest accruing during the appeal on the judgment, which exceeded the amount of the bond. Judgment on the bond was reversed because there was no showing that the mortgagee had suffered a loss. Chief Justice Waite pointed out that "[s]o far as appears, the lands may have increased in value to an amount larger than the accumulation of interest, and the taxes may have been paid." 103 *U.S.* at 558, 26 *L.Ed.* at 488.

The federal precedents establish that the purpose of the supersedeas bond posted in foreclosure proceedings is to indemnify the mortgagee from loss in the respect stated in the supersedeas ,bond due to the delay occasioned by the appeal. Our rules governing supersedeas bonds serve the same purpose. If the mortgagee does not suffer a loss by reason of the delay, then no damages may be recovered under the bond.

It is important to recognize, however, that the losses protected against are only those specified. *R.*2:9–6(a) limits the requirements of the bond to a sum that will secure *only* against losses caused by use and detention of property, trial and appellate costs and loss of interest. The draft of the first proposed rule, *R.*1:2–8, listed these elements and damages for delay. Rules Governing The Courts of New Jersey (Tent. Draft, March 27,

1948). This was identical to *Fed.R.Civ.P.* 73(d). However, when the rule was adopted, the Court eliminated damages for delay. *R*.1:2–13(a) (effective September 15, 1948). In limiting the items for which an appellant might be responsible, the Court was balancing the protection to be afforded the respondent and the desirability of encouraging an appellant to prosecute a meritorious appeal. The broader the protection afforded in the bond, the greater the likelihood of a chilling effect on the litigant who desired to appeal. The rule reflects that accommodation of competing interests.[5]

The trial court in the instant case invoked *R*.2:9–6(a) which requires, as a condition of staying the sale pending appeal, that the mortgagor post a supersedeas bond to secure interest, costs, counsel fees and losses due to possession of the premises. If the mortgagee did not lose the interest to which it was lawfully entitled subsequent to the judgment of foreclosure, then it should not be allowed to recover that interest from the mortgagor. The purpose of the bond is to secure the mortgagee against harm. If no harm has been done, no interest is due.

Consequently, if as a result of the price received from the foreclosure sale to a bona fide third person, the mortgagee receives an amount sufficient to satisfy the indebtedness (principal and interest) due plus the interest accrued subsequent to the foreclosure judgment while the appeal ·was pending, then the mortgagee should not prevail on a supersedeas bond conditioned on payment of the same interest. See *Gruber v. Ewbanks*, 199 *N.C.* 335, 154 *S.E.* 318 (1930) (if, notwithstanding the stay, the creditor collects the debt, interest and costs by the sale of the

---

[5]Where the subject matter may be adversely affected due to an appeal, the courts may relax the rules and expedite the appeal. See, e.g., *DeSimone v. Greater Englewood Housing Corp. No. 1*, 56 *N.J.* 428, 434 (1970), in which this Court granted direct certification of one cause, directed a losing party to appeal, if it so desired, within five days on a second related matter, set a briefing schedule and ordered oral argument, all of which took place in less than thirty days.

property after dissolution of the stay, the creditor sustains no damages by reason of the stay and may not recover on the supersedeas bond). *Contra, Fidelity and Deposit Co. of Maryland v. Atlantic National Bank of Jacksonville,* 234 *So.*2d 736 (Fla.App.), *cert.* den. 238 *So.*2d 111 (Fla.Sup.Ct.1970); *Jacksonville v. Brentwood Golf Course, Inc.,* 338 *So.*2d 1105 (Fla.App. 1976). If the sale proceeds are insufficient to cover that interest, then the action on the supersedeas bond may be maintained. A partial recovery of the interest from the sale proceeds would permit a proportionately decreased recovery on the bond.

■ In this case the mortgagee purchased the property for $100, though it is claimed that its value was at least $1,125,000. The amount due, $983,161 plus interest of $129,293 or a total of $1,112,454, was conceivably less than the value of the property obtained by the mortgagee.[6] Under these circumstances, the parties should be permitted to prove fair market value and net proceeds from the hypothetical sale.[7] The trial court may then determine what loss in interest, if any, the mortgagee suffered. In making this determination, the trial court should also factor in the other items covered by the bond: appellate costs, counsel fees and losses the mortgagee sustained from its possession of the premises during the appeal.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For affirmance*—None.

---

[6]The property was conveyed in April 1981 for $1,280,000. The plaintiff bank had appraised the property in 1972 for $1,135,000.

[7]It may be that in such proceedings determination of a deficiency on a bond or note can also be ascertained. See *N.J.S.A.* 2A:50–2 and –3 (Supp.1980). We are referring this matter to the Supreme Court's Civil Practice Committee for its consideration.