742 A.2d 542

FRANK COURVOISIER AND LINDA COURVOISIER, HUSBAND AND WIFE, PLAINTIFFS–RESPONDENTS, v. HARLEY DAVIDSON OF TRENTON, INC., DEFENDANT–RESPONDENT, AND HARLEY DAVIDSON, INC.; JOHN DOE(S), I–IV FICTITIOUS DEFENDANTS, ABC COMPONENT PART CORPORATION, A FICTITIOUS DEFENDANT, DEF MANUFACTURING COMPANY A FICTITIOUS DEFENDANT, DEFENDANTS, AND AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, INTERVENOR–APPELLANT.

Argued September 28, 1999—Decided December 21, 1999.

154

*John T. Coyne,* argued the cause for intervenor-appellant (*McElroy, Deutsch & Mulvaney,* attorneys).

*David P. Corrigan,* argued the cause for respondents Frank Courvoisier and Linda Courvoisier (*Giordano, Halleran & Ciesla,* attorneys; *Mr. Corrigan* and *Michael R. Hobbie,* on the brief).

*Linda J. Schwimmer,* argued the cause for respondent Harley Davidson of Trenton, Inc. (*Markowitz and Zindler,* attorneys).

The opinion of the Court was delivered by

LONG, J.

In 1993, plaintiff Frank Courvoisier was seriously injured in a single motorcycle accident. His motorcycle was purchased from, and serviced by, defendant Harley Davidson of Trenton, Inc. (Harley Davidson). Courvoisier sued Harley Davidson for negli-

gent maintenance of the motorcycle that, he claimed, proximately caused the accident. A jury returned a verdict of $1.1 million in his favor.[1] The trial court entered judgment on the verdict against Harley Davidson in the amount of $1,441,357.81, which included pre-judgment interest.

At the time of the accident, Harley Davidson carried a garage liability insurance policy with a limit of $500,000 per occurrence issued by American Hardware Mutual Insurance Company (American Hardware). American Hardware provided representation to Harley Davidson in connection with Courvoisier's lawsuit. When Harley Davidson appealed, American Hardware filed a motion, opposed by Courvoisier, for a "partial stay" of the judgment upon the posting of a supersedeas bond in the amount of its policy limit. Harley Davidson filed a cross-motion to compel American Hardware to post a bond in the full amount of the judgment on the ground that American Hardware had failed to attempt, in good faith, to negotiate a settlement within the policy limits. By this time, Harley Davidson had retained a private attorney to represent its interests with respect to the excess judgment.

The trial court denied American Hardware's motion and ordered it to post a bond in the full amount of the judgment to secure a stay. In so doing, it reasoned that American Hardware could be found liable for the entire judgment if it breached its duty of good faith to settle the claim within the policy limits. The court observed that on the basis of the trial testimony, including the severity of Courvoisier's injuries and the admission of a Harley Davidson employee that Courvoisier's motorcycle had been negligently repaired, American Hardware's sole offer of $100,000 could subject it to liability for the entire judgment on a breach of fiduciary duty theory. At least, according to the court, Harley Davidson had made a "preliminary showing" to that effect.

---

[1] Courvoisier's wife, Linda, sued per quod. A verdict of $110,000 was returned on that claim, along with an award of $58,000 (reduced to $21,383.39 pursuant to statute) for reimbursement to third-parties for medical expenses.

The Appellate Division denied American Hardware's motion for a stay.[2] Thereafter, American Hardware moved for reconsideration of the trial court's prior decision. American Hardware presented certifications indicating that it had handled the claim against Harley Davidson in good faith. Harley Davidson and Courvoisier countered with certifications of their own to the contrary.

The trial court denied the motion. Among other things, the court ordered:

> that, if American Hardware chooses to pursue an appeal of the verdict on behalf of Harley Davidson of Trenton, Inc., then in order to obtain a stay of execution of the judgment, American Hardware must post a bond in the amount of $1.5 million; and

> IT IS FURTHER ORDERED that, if American Hardware does elect to pursue an appeal and post a $1.5 million bond, then Harley Davidson of Trenton, Inc. will be enjoined from dissipating its assets except as in the ordinary course of business; and

> IT IS FURTHER ORDERED that, should American Hardware elect not to pursue an appeal of the verdict, then it may tender its policy limits with supplementary payments and, in that event, shall not be obligated to post any bond on behalf of Harley Davidson of Trenton, Inc.

Thereafter, the Appellate Division denied American Hardware's motion for leave to appeal and for a stay.

We granted American Hardware's motion for leave to appeal from that portion of the trial court's order that conditioned a stay on American Hardware's posting of a supersedeas bond in the full amount of $1.5 million. We ordered Harley Davidson's appeal on the merits to proceed in the Appellate Division and, pending disposition of the appeal, stayed execution on the judgment on

> the posting by intervenor of a supersedeas bond in the amount of the limits of its garage liability insurance policy issued to Harley Davidson, together with costs and interest to be determined by the trial court as likely to accrue during the pendency of the appeals.

---

[2] By this time, American Hardware was denominating itself as an intervenor in the appeal although no order of intervention was sought or granted.

The trial court's non-dissipation order remained in effect.[3]

### I

A supersedeas bond is a "device to protect a party who has been successful at trial but has been forestalled from proceeding during an appeal." *Hudson City Sav. Bank v. Hampton Gardens Ltd.*, 88 *N.J.* 16, 20, 438 *A.2d* 323 (1981). Its terms and conditions are governed by *Rules* 2:9–5 and 6. *Rule* 2:9–5(a) states in part:

A judgment or order in a civil action adjudicating liability for a sum of money or the rights or liabilities of parties in respect of property which is the subject of an appeal or certification proceedings shall be stayed only upon the posting of a bond pursuant to *R.* 2:9–6 or a cash deposit pursuant to *R.* 1:13–3(c) unless the court otherwise orders on good cause shown. Such posting or deposit may be ordered by the court as a condition for the stay of any other judgment or order in a civil action.

*Rule* 2:9–6(a) continues, in part:

Unless the court otherwise orders after notice on good cause shown, the bond shall be conditioned for the satisfaction of the judgment in full, together with interest and trial costs, and to satisfy fully such modification of judgment, additional interest and costs and damages as the appellate court may adjudge.... In all other cases not specifically provided for herein the amount of the supersedeas bond shall be fixed by the court.

The rules balance the interests of litigants after trial by guaranteeing the losing party a stay pending appeal while protecting the successful party, who would otherwise be in a position to execute, from any loss occasioned by the appellate delay. The vehicle prescribed by the rules for a stay is a supersedeas bond in the full amount of the judgment plus interest and costs, unless the judge finds "good cause" to order otherwise.

Courvoisier and Harley Davidson argue that American Hardware advanced no good cause to waive the full bond requirement. They also contend that American Hardware handled Courvoisier's case against Harley Davidson in bad faith, thus rendering the insurer liable for the excess amount of the judgment under *Rova*

---

[3] We are advised that the appeal in the underlying matter has been perfected and is scheduled for submission to an Appellate Division panel on January 19.

*Farms Resort, Inc. v. Investors Ins. Co.*, 65 *N.J.* 474, 323 *A*.2d 495 (1974).

American Hardware counters that the face amount of its policy circumscribes its obligation to Harley Davidson and establishes good cause to allow it to file a supersedeas bond in that amount; that the record underscores the reasonableness of its evaluation of the case and settlement offer; that, in any event, an insurer's bad faith is not a factor during a good cause analysis under *Rule* 2:9–6; and that a *Rova Farms* hearing after the appeal is the appropriate vehicle for making Harley Davidson whole if American Hardware is found to have breached its duty of fair dealing in the underlying case.

## II

██ We turn again to the Rules. Good cause to alter the full bond requirement as to form or amount relates to the protection of the judgment creditor. Presumably, if something other than a bond in the full amount of the judgment plus interest and costs would protect the judgment creditor to the same extent as would be the case had no stay been sought, good cause would exist. Only one reported case in New Jersey has addressed the issue of what constitutes good cause under *Rule* 2:9–6. *See* Pressler, *Current N.J. Court Rules,* comment on *R.* 2:9–6 (1999).

In *Rosato v. Penton,* 182 *N.J.Super.* 493, 442 *A*.2d 656 (Law Div.1981), the plaintiff obtained a $38,000 judgment against the defendant for injuries suffered in an automobile accident. Defendant's liability policy provided coverage of only $15,000. Allstate Insurance Company, defendant's insurer, filed an appeal on defendant's behalf, and sought permission to submit a supersedeas bond in the amount of $15,000, rather than $38,000. The trial court, observing that this question was a matter of first impression in New Jersey, granted Allstate's request. It noted that many other jurisdictions permit insurance companies to post partial bonds in similar situations and that " 'considerations of practical convenience should play the leading role in determining what consti-

tutes good cause.' " *Id.* at 495, 442 *A.*2d 656 (quoting *Ullmann v. Hartford Fire Ins. Co.,* 87 *N.J.Super.* 409, 414–15, 209 *A.*2d 651 (App.Div.1965)). The court permitted plaintiff to engage in supplementary proceedings pursuant to *Rule* 4:59–1(e) to ascertain whether defendant, who was characterized as judgment proof, had received or was likely to receive additional assets subject to execution; if so, defendant would be required to pay them into the court to satisfy the judgment. In other words, the court allowed the insurer to secure its portion of the judgment, precluded execution against the insurance proceeds and looked to the individual defendant for the remainder of the security.

This outcome conforms with the weight of out-of-state authority that holds that an insurer may obtain a stay of judgment up to its policy limit by posting a bond in an amount equal to the policy limit rather than the full judgment. The Supreme Court of California addressed the issue in *Merritt v. J.A. Stafford Co.,* 68 *Cal.*2d 619, 68 *Cal.Rptr.* 447, 440 *P.*2d 927, 929 (1968), in interpreting section 942 of the California Code of Civil Procedure. Section 942 provided, in part, for a stay upon the filing of a surety bond in an amount one and one-half times the amount of the judgment. *Ibid.* The court found section 942 to be silent about the appropriateness of a lesser surety bond and interpreted that silence as providing room to carve out a "good cause" type exception allowing a "bond furnished by a liability insurer to stay the part of a judgment within its policy limits." *Id.* at 931. *Merritt*'s detailed explanation best summarizes the reasoning common to all of the out-of-state decisions that permit an insurer to post a bond in the amount of its policy limit:

> Protection of the right of appeal of insurers, and consideration of the rights of insureds and of the judgment creditor require such a result. Liability insurance is ordinarily written with limits, and when a judgment is obtained in excess of those limits, an insurer should not be faced with the alternatives of either posting a bond for the entire judgment or refusing to post a bond at all. In every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other party to receive the benefits of the agreement. Failure of the insurer to file any bond may result in the insured losing large amounts of property due to execution sales during the appeal and thus losing in large part, if not entirely, the benefits of

the insurance. On the other hand, the insurer cannot be required to post a bond for the entire judgment when its liability does not extend to the entire judgment. Fairness to the insurer and the insured requires that the insurer be permitted to fulfill its covenant of good faith and fair dealing by filing an appeal bond in an amount sufficient to cover the part of the judgment for which it is liable and that the respondent be denied his right to seek execution with regard to such part of the judgment. Such a rule does no harm to the respondent. As to the excess part of the judgment he may seek execution or enter into an agreement to stay execution with the insured, and as to the part of the judgment within the policy limits he will be protected by the bond.

In other words, where there is a judgment in excess of the policy limits, the insurer and the insured have separate and differing interests; the insurer may furnish a bond for the portion of the judgment within the policy limits, and the bond will be given effect pending appeal to stay execution on that portion of the judgment.

[*Id.* at 931–32 (citations omitted).]

Many other jurisdictions have reached the same conclusion. *See Cansler v. Harrington*, 231 *Kan.* 66, 643 *P.*2d 110, 114 (1982) ("It is inequitable to require an insurance company to post a $25,000 supersedeas bond to stay a garnishment when its policy limits are only $15,000."); *Wilcox v. Board of Educ. of Warren County*, 779 *S.W.*2d 221, 223 (Ky.1989) (finding that insurer can post partial supersedeas bond in its policy limit to stay enforcement of that part of judgment); *Bowen v. Government Employees Ins. Co.*, 451 *So.*2d 1196, 1198 (La.Ct.App.1984) (citation omitted) (holding that if the insurer were to post a bond in the entire amount of the judgment it would, in effect, rewrite the policy to provide coverage beyond the contractual limits); *O'Donnell v. McGann*, 310 *Md.* 342, 529 *A.*2d 372, 377 (1987) (trial court did not abuse its discretion by ruling that insurer "could not be expected to post a bond in excess of the face amount of its policy plus interest on the judgment and costs"); *Missouri ex rel. Brickner v. Saitz* 664 *S.W.*2d 209, 214 (Mo.1984) ("There is no reason to put the insurance company to the choice of paying the plaintiff the full amount of its coverage, with restitution in the event of reversal possibly in jeopardy, or of putting up a bond for the non-covered portion of the judgment so as to provide effective coverage which

the insured did not buy.").[4]

Only two out-of-state cases have reached a different conclusion. One, *Blackwell v. Sidwell*, 126 A.2d 237 (Del.1956), was based on a previous interpretation of a specific provision of the Delaware constitution requiring a bond in the full amount of the judgment. The other, *Wentzel v. Huebner*, 78 S.D. 471, 104 N.W.2d 476 (1960), was based on a statute without a good cause exception.

■ We think that the majority rule is sensible. The relationship of the insured and the insurer in these circumstances is one of contractual indemnification. *Pirics v. First Russian Slavonic Greek Catholic Benevolent Soc'y*, 83 N.J. Eq. 29, 33, 89 A. 1036 (N.J.Ch.1914); *Kase v. Hartford Fire Ins. Co.*, 58 N.J.L. 34, 35–36, 32 A. 1057 (N.J.Sup.Ct.1895). The insurer has agreed, in return for a premium, to be responsible to pay a judgment against the insured up to the face amount of the insurance contract.

On the appeal, both the insurer and the insured have an interest in the outcome. Where the judgment is within the insurance limits, those interests are identical. However, where there is an excess judgment, although both parties' interests coalesce insofar as challenging the judgment and obtaining a stay are concerned, they diverge when a supersedeas bond is required under *Rule* 2:9–6. Plainly the insurer's interest is in obtaining a stay of execution on the portion of the judgment for which it could be liable. The insured however seeks a stay of the entire judgment. Where such divergence occurs, what is good cause under *Rule* 2:9–6 for one is not necessarily good cause for the other. On the one hand, merely being underinsured is ordinarily not good cause to allow the insured to obtain a stay on the posting of a bond for less than the full judgment. On the other, the insurer should not be required to

---

[4] Several states have enacted statutes to achieve this outcome. *See, e.g., N.Y. Civ. Prac. L. & R.* § 5519 (McKinney 1999); *Mich. Comp. Laws Ann.* § 500.3036 (West 1999). To be sure, the existence of a statute cuts both ways insofar as New Jersey's Court Rules could have explicitly provided for a partial stay in these circumstances. However, it also permits the conclusion that adopting the prevailing view is a reasonable interpretation of *Rules* 2:9–5 and 6.

post a bond for the entire judgment when its contractual liability is not coextensive with that amount. Fairness requires that the insurer be permitted the option of bonding, not the entire judgment, but the entire judgment for which it could be liable and obtaining a stay to that extent. We read the good cause exception in *Rule* 2:9–6 as encompassing a bond by an insurer up to the limit of its liability, and authorizing a stay of execution against the insurer coextensive with the bond.

So interpreted, the rule reconciles the interests of the insurer, the insured and the judgment creditor. On the filing of a partial bond by the insurer, the judgment creditor is secured up to the limit of the insurance. That does not relieve the insured of its obligations under *Rule* 2:9–6. In order to stay the remainder of the judgment, there are several options. The insured may bond the excess; show good cause why a full bond for the excess is not necessary to protect the judgment creditor; or be subject to supplementary proceedings including a non-dissipation order and possible execution. That is a necessary corollary of the rule because an underinsured defendant should not be in a better position than an uninsured defendant who must post a full bond in order to secure a stay. Where the insurer has posted a partial bond and the insured does not have financial wherewithal to bond the excess, the judgment creditor's action to collect the excess places the insured at no more of a disadvantage than would have been the case had the insurer not obtained a partial stay.

Thus, we hold that in a case in which an excess judgment is appealed, the insurer will qualify under the good cause exception to *Rule* 2:9–6 to post a bond up to the limit of its liability in exchange for a partial stay of the judgment to that extent.

### III

It is the next question that is more difficult: whether the alleged bad faith of American Hardware should be taken into account at a good cause hearing under *Rule* 2:9–6. In *Rova Farms, supra,* we described the duty of an insurer such as

American Hardware to exercise good faith in an attempt to settle all claims in an amount within the policy limit:

[W]here under the policy the insurer reserves full control of the settlement of claims against the insured, prohibiting him from effecting any compromise except at his own expense, that reservation—viewed in light of the carrier's obligation to pay on behalf of the insured all sums up to the policy limit which he shall become obligated to pay—imposes upon the insurer the duty to exercise good faith in settling claims.

[*Rova Farms, supra,* 65 *N.J.* at 492, 323 *A.*2d 495.]

A question whether the insurer fulfilled that duty is raised "where ... any adverse verdict at trial is likely to exceed the policy limit." *Id.* at 493, 323 *A.*2d 495. *Rova Farms* set forth the standards for evaluating whether the insurer acted in good faith:

"[A] decision not to settle must be a thoroughly honest, intelligent and objective one. It must be a realistic one when tested by the necessarily assumed expertise of the [insurance] company." This expertise must be applied, in a given case, to a consideration of *all the factors* bearing upon the advisability of a settlement for the protection of the insured. While the view of the carrier or its attorney as to liability is one important factor, a good faith evaluation requires more. It includes consideration of the anticipated range of a verdict, should it be adverse; the strengths and weaknesses of all of the evidence to be presented on either side so far as known; the history of the particular geographic area in cases of similar nature; and the relative appearance, persuasiveness, and likely appeal of the claimant, the insured, and the witnesses at trial.

[*Id.* at 489–90, 323 *A.*2d 495. (citations omitted).]

Under *Rova Farms,* it is the insured's burden to "establish bad faith on the part of the insurer" in a separate trial. *Yeomans v. Allstate Ins. Co.,* 130 *N.J.Super.* 48, 52, 324 *A.*2d 906 (App.Div.1974); *see also Fireman's Fund Ins. Co. v. Security Ins. Co.,* 72 *N.J.* 63, 70, 367 *A.*2d 864 (1976) (stating that insured must prove insurer's "bad faith" in action under *Rova Farms* based on insurer's failure to settle). Once the insured establishes such bad faith,

a prima facie case of damages for the difference between the policy limit and the excess verdict has also been shown. It is then up to the insurer to demonstrate that settlement could not have been achieved within the policy limit or for the policy limit plus any amount the insured would have been able and willing to contribute.

[*Yeomans, supra,* 130 *N.J.Super.* at 52, 324 *A.*2d 906.]

Both Harley Davidson and Courvoisier allege that American Hardware's bad faith is a factor requiring it to bond the full judgment. We need not detail their claim, because its specifics do not bear on the resolution of the theoretical issue before us. It is sufficient to say that they view the trial testimony as clear evidence that American Hardware's $100,000 offer was a breach of fiduciary duty. Their legal point is that if the court ultimately holds the insurer responsible for the excess judgment as a result of its bad faith, to have subjected the insured to pre-appeal execution and not to have better protected the judgment creditor is unfair. That argument is not only intuitively persuasive, but legally so. If the basis for allowing an insurer to post a partial bond is the limit of its liability, it follows that if the insurer is responsible for the excess, its bond should be coextensive therewith.

Unfortunately, the devil is in the details. There is simply no practical way to dispose of the *Rova Farms* case in time to fully factor it into a *Rule* 2:9–6 analysis. Thus, the most that could be accomplished would be some kind of a preliminary hearing, for example, a summary proceeding devolving upon the insured a *prima facie* burden of proof, or a judicial determination of substantial likelihood of the insured's success on the merits. Such a proceeding could result only in a conditional bond of the excess judgment, not collectable by the judgment creditor until the *Rova Farms* issue was resolved, regardless of how the appeal turned out. That procedure, in turn, could prompt the judgment creditor to take action against the judgment debtor despite the existence of the bond, as a hedge against an unfavorable *Rova Farms* verdict, although execution pending appeal is what the suggested procedure was intended to avoid in the first place. Given that a judgment-proof debtor would not be affected at all by the spectre of pre-appeal execution, that a debtor with assets might well be able to bond the excess and charge back the cost of the bond to the insurer in a successful *Rova Farms* proceeding, and that, in most cases, requiring such a bond from a solvent insurer would be

redundant, we have doubts about how effective such a procedure would be.

That is, most likely, the reason why our sister states have nearly uniformly adopted the view that a *Rova Farms* type issue cannot be part of a supersedeas bond inquiry. *See Fitzgerald v. Addison,* 287 So.2d 151, 154 (Fla.Dist.Ct.App.1973) ("[W]e are not passing on the question of whether in this instance [the insurer] may have been guilty of bad faith to its insured for failure to settle within the limits prior to judgment.... These contentions would have to be resolved in a trial ... and this has not occurred."); *Wilcox, supra,* 779 *S.W.2d* at 223–24 ("[Plaintiffs] ask if [the insurer's] bad faith failure to settle within the $500,000 claimed policy limits obligates it to supersede the full amount of the judgment. This [ ] is a question we cannot answer on appeal. It is an issue that must be determined by some future trial proceeding which should include [the insurer] as a party."); *State ex rel. Kissell v. Clark,* 848 *S.W.2d* 44, 45 (Mo.Ct.App.1993) ("The respondent asserts ... the insurance company is, or may be, liable for the full amount of the judgment because of its bad faith, or negligent failure to settle plaintiff's claim within the policy limits.... [T]hat remains to be established in another proceeding. The possibility of the establishment of such a claim has nothing to do with the present case.").

We agree with that approach, at least for now, although we are still troubled, as was the trial court, by the possibility of pre-appeal execution against a judgment debtor whose insurer is later found liable for the excess on a breach of good faith theory. To say that such an insured can be made whole after the fact at a *Rova Farms* hearing is unrealistic. An insured who, as a result of bad faith actions by the insurer, loses a home or business, can not be made whole after the fact.

In this case, execution has been forestalled by the combination of the insurer's bond and the non-dissipation order. We nevertheless leave open the possibility of developing a procedure that could better fulfill the purposes of protecting all parties during a stay

pending appeal. Toward that end, we request the Civil Practice Committee to review the "good cause" provisions of *Rule* 2:9–5 and 6 and suggest whether new procedures are warranted to address our concerns.

## *IV*

 Courvoisier argues finally that even if American Hardware is allowed to post a partial bond, that bond should cover the interest on the judgment. He claims that the bond should be in the amount of $800,000, not the policy limit of $500,000. Whether that is correct depends on the nature of American Hardware's undertaking. In this respect, Courvoisier cites *Roth v. General Cas. and Sur. Co.*, 106 *N.J.L.* 516, 146 *A.* 202 (E. & A.1929). There, however, the insurer was required to pay interest in excess of the policy limit because the policy stated that "all interest accruing after entry of judgment will be borne by the company irrespective of the limit of liability expressed in the policy." *Id.* at 520, 146 *A.* 202. Similarly, in *DiBenedetto v. Estate of DiBenedetto*, 219 *N.J.Super.* 440, 443, 530 *A.*2d 800 (App.Div.1987), the insurance policy unambiguously required the insurer to pay post-judgment interest on the entire amount of the judgment. There is nothing in this record about the extent of American Hardware's undertaking in insuring Harley Davidson. The trial court should consider whether the policy covers interest. If it does, American Hardware should be required to bond accordingly. *Hudson City Sav. Bank v. Hampton Gardens, Ltd.*, 88 *N.J.* 16, 22, 438 *A.*2d 323 (1981). We remand the case for that purpose.

## *V*

The matter is remanded to the trial judge for proceedings consistent with this opinion. We request the Civil Practice Committee to review *Rule* 2:9–5 and 6 and to determine whether any revisions would be appropriate to address the issues raised in this appeal.

*For remandment*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO—7.

*Opposed*—None.