JULIA TRECARTIN, ADMINISTRATRIX *AD PROSEQUEN-*
*DUM* UPON THE ESTATE OF RICHARD F. TRECARTIN,
DECEASED, PLAINTIFF, v. MAHONY-TROAST CON-
STRUCTION CO., A CORPORATION OF THE STATE OF
NEW JERSEY, DEFENDANT AND THIRD-PARTY PLAIN-
TIFF-APPELLANT, TERRY STEEL CONTRACTORS, INC.,
THIRD-PARTY DEFENDANT-APPELLANT-RESPONDENT.

Argued January 23, 1956—Decided February 13, 1956.

(1)

*Mr. John E. Hughes* argued the cause for third-party plaintiff-appellant (*Messrs. Shaw, Hughes & Pindar*, attorneys).

*Mr. Joseph M. Jacobs* argued the cause for third-party defendant-respondent (*Messrs. Stoffer and Jacobs*, attorneys).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. We granted certification to decide the following question: when each party separately seeks and is denied interlocutory relief by the trial court and the Appellate Division pursuant to *R. R.* 2:2–3(*b*) allows one party leave to appeal from the action adverse to him, may the other party cross-appeal of right from the action by which he is aggrieved?

Terry Steel Contractors, Inc., held a subcontract with Mahony-Troast Construction Co. to do the structural steel work in the erection of a tower. Terry's employee, Richard F. Trecartin, was killed in a fall from the tower. His administratrix *ad prosequendum* sued Mahony-Troast, alleging that his death was due to its negligence.

Mahony-Troast filed a third-party action against Terry demanding that Terry hold it harmless under a provision of the subcontract by which Terry agreed to indemnify it for

damages for bodily injuries or death sustained by any person "due to any act or omission of the subcontractor, his employees or agents, arising out of and during the prosecution of the work of the subcontractor." This third-party action was severed from the main case.

The trial of the main case resulted in a verdict for the plaintiff which, however, was reversed by the Appellate Division with direction for a new trial. *Trecartin v. Mahony-Troast Construction Co.*, 18 *N. J. Super.* 380 (1952). Thereafter the main case was settled, and on December 19, 1952 a stipulation of dismissal was filed, signed by the plaintiff and Mahony-Troast but not by Terry, expressly providing that the dismissal was "without effect upon the continuance of the third-party action."

Mahony-Troast allowed two and one-half years to pass before moving, on March 10, 1955, for leave to amend the third-party complaint and to restore the action to the active trial calendar. The proposed amended complaint is in two counts. The first count recites the facts as to the course taken by the main case and its dismissal after settlement. Judgment is demanded in the amount of the settlement plus the sums expended in the defense of the main case, the complaint alleging that Mahony-Troast's negligence, if any, contributing to Trecartin's death "was merely passive in character" and that Trecartin's death "was in fact caused by the active negligence of the agents, servants or employees of Terry." The theory of this count apparently is a claimed right of indemnification based upon an alleged distinction between "active" and "passive" negligence. See *Public Service Electric & Gas Company v. Waldroup*, 38 *N. J. Super.* 419 (*App. Div.* 1955). The second count claims a right of indemnification by force of the express provision of the subcontract mentioned in the original complaint.

Terry countered with motions for summary judgment and to dismiss the third-party action for lack of prosecution and upon the ground that the action was moot.

The trial judge denied all of the motions but ordered that the cause be set down for pretrial conference.

Terry then successfully sought leave of the Appellate Division under *R. R.* 2:2–3(*b*) to appeal from the portion of the interlocutory order denying its motions to dismiss the action and to enter summary judgment. Mahony-Troast did not seek leave to appeal from that portion of the order denying its motion for leave to file an amended third-party complaint but, after the filing of Terry's notice of appeal, attempted to appeal therefrom by filing a cross-appeal.

Terry moved in the Appellate Division to dismiss the cross-appeal upon the ground that the portion of the order denying leave to amend the third-party complaint was interlocutory, *Galler v. Slurzberg*, 22 *N. J. Super.* 477 (*App. Div.* 1952), certification denied 11 *N. J.* 582 (1953), and not appealable without prior leave by the Appellate Division. The Appellate Division granted the motion and dismissed the cross-appeal. As mentioned, we granted certification, 19 *N. J.* 484 (1955).

We have held that where a party takes an appeal of right to this court from a final judgment upon a ground for which an appeal of right lies under *R. R.* 1:2–1, any other party may cross-appeal of right even as to questions not themselves the subject of an original appeal of right, *Frank v. Frank*, 7 *N. J.* 225 (1951). We there held (at *p.* 235):

"* * * The case being properly before the Supreme Court by virtue of the constitutional question raised by the original appeal, the court has jurisdiction and will consider all questions presented by the cross-appeal, even though they are not such as in and of themselves would give the right to an original appeal under *Rule* 1:2–1."

On the other hand, we have said that when this court allows a discretionary appeal by certification under *R. R.* 1:10–2, no other party will be heard to attack the parts of the judgment by which he is aggrieved unless he has cross-petitioned for and has been expressly allowed certification of such questions. *Liberty Title & Trust Co. v. Plews*, 6 *N. J.* 28 (1950). There we said (at *p.* 45):

"* * * A party may not, following the granting of his opponent's petition for certification, attack the judgment under review without

himself having successfully petitioned for certification. If he is to have this court review the action of the court below insofar as it is adverse to him, he must follow the same procedure as if his adversary had taken an appeal as of right. Just as there he must take a cross-appeal, so here he must make a cross-petition for certification and succeed on his application."

Mahony-Troast argues on its brief that the instant situation calls for the application of the principle of the *Frank* case rather than that of the *Plews* case. It is reasoned that under our rules of court "the interlocutory appeal, taken with leave, is to be considered to have the same stature as an appeal taken as of right." Reference is made to a number of rules applicable to the processing of both types of appeal; particular emphasis is laid upon the provisions of *R. R.* 2:2–3(*b*) as it read when Terry was allowed leave to appeal (the rule has since been revised and the language omitted), providing that "In the event the appeal is allowed, the moving party shall serve and file a notice of appeal within 10 days of the date of the order permitting the appeal, *and further proceedings shall be had in the same manner as in other appeals.*"

But the provisions for the processing of an allowed interlocutory appeal in the same manner as an appeal of right cannot obscure the vital distinction between the two types of appeal made under our rules of court. Interlocutory orders and judgments are appealable only as expressly provided by such rules; the order denying Mahony-Troast leave to file its amended complaint is of the type which may be reviewed only as the Appellate Division in its discretion determines that review is appropriate within the standards specially laid down by *R. R.* 2:2–3(*b*). Those standards at the time the cross-appeal was filed were when "the grounds of appeal are substantial and the appeal, if sustained, will terminate the litigation," and now, under the revised rule, the standard is when "the grounds of appeal are substantial."

It is the aim of these restrictions against interlocutory appeals to further one of the fundamental underlying postulates of our present judicial system, namely, that a judicial

system better serves the public interest by uninterrupted trials than would be the case if final dispositions were suspended pending appellate review of intermediate actions in the cause. We favor the first of the two competing approaches to the matter of interlocutory appeals—"one lays its stress upon the inconvenience and expense of piecemeal reviews and the strong public interest in favor of a single and complete trial with a single and complete review—the other lays its stress upon the dangers of individual injustices which may result from the denial of any appellate review until after final judgment at the trial level." *In re Appeal of Pennsylvania Railroad Company*, 20 *N. J.* 398 (1956).

Implicit in the first approach is the rationale that a limitation of interlocutory review to "certain specified unusual situations," *State v. Le Fante*, 14 *N. J.* 584, 591 (1954), makes for more orderly and efficient determination of the ultimate merits of any controversy with consequent greater realization of right and just results. Justice Jacobs, in the *Pennsylvania Railroad* case, dealt at length with the considerations and authorities supporting this view and there is therefore no occasion to pursue the subject further here.

It is obvious that to sustain, as of right, the cross-appeal in the instant case would do complete violence to the ends sought to be served by the limitations of *R. R.* 2:2–3($b$). The standards set up in that rule, as it read at the time, would have resulted in the denial of leave to appeal if leave had been sought because the appeal, if sustained, would not terminate the litigation. And even if we assume that Mahony-Troast could satisfy the broader standard of the revised rule, that "the grounds of appeal are substantial," its case is no better; an integral element of the scheme for controlling interlocutory appeals from orders of this type is the provision requiring that the Appellate Division in the first instance bring to bear the judicial discretion of that court upon the merits of any such review under that standard. If the cross-appeal lies of right, that requisite becomes a dead letter and there exists a loophole in the control plan plainly apt to "encourage an unseemly parade to the appellate courts and

to add to the time and expense of administration." *Dickinson Industrial Site v. Cowan,* 309 *U. S.* 382, 389, 60 *S. Ct.* 595, 599, 84 *L. Ed.* 819, 825 (1940).

But Mahony-Troast argues that if Terry succeeds on its appeal and obtains a final judgment in its favor, the litigation will not end because Mahony-Troast may then appeal from such final judgment and bring up for review the denial of the motion to file the amended complaint. The result then, it is said, means piecemeal review which it is our effort to avoid and which can be avoided here if the cross-appeal is entertained.

Terry meets the argument with the suggestion that if it succeeds in reversing the order denying its motions for dismissal and for summary judgment on the ground either that the action should have been dismissed "for a wholly unexplained lack of prosecution" or "that any liability of Mahony-Troast to the plaintiff Trecartin would necessarily have to be based upon Mahony-Troast's own negligence," such judgment would be also "determinative of the alleged right further to pursue this matter by the proposed amended complaint."

We think the more dispositive answer is that the possibility envisioned by Mahony-Troast is at all events not a reason for the admitting of an exception, not found in the rule, to the requirement that such orders shall not be reviewable before final judgment except as the Appellate Division first affirmatively allows review upon proper application therefor. We conclude that the reasoning of the *Plews* case applied to review by certification in this court applies also in the instant situation, and the judgment of the Appellate Division is therefore

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices BURLING and BRENNAN—3.

*For reversal*—Justices HEHER and O.IPHANT—2.