959 A.2d 252 (2008)
403 N.J. Super. 443
GROW COMPANY, INC., Plaintiff-Appellant/Cross-Respondent,
v.
Dilip CHOKSHI and Pharmachem Laboratories, Inc., Defendants-Respondents/Cross-Appellants.
No. A-4282-06T2.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2008.
Decided November 12, 2008.
*255 Dennis F. Gleason, Roseland, argued the cause for appellant/cross-respondent (Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart *256 & Olstein, attorneys; Carl R. Woodward, III and Mr. Gleason, of counsel and on the brief).
Richard L. Ravin, argued the cause for respondents/cross-appellants (Hartman & Winnicki, attorneys; Mr. Ravin, of counsel and on the brief; Richard E. Kummer, on the brief).
Before Judges FISHER, C.L. MINIMAN and BAXTER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we review a partial summary judgment that applied the terms of an earlier settlement agreement as a basis for dismissing the claims of plaintiff Grow Company, Inc. against defendant Dilip Chokshi, a former employee, and defendant Pharmachem Laboratories, Inc., with whom Chokshi presently has a business relationship. The judge also found that the settlement agreement authorized an award of counsel fees to Chokshi, but he did not quantify the amount due, choosing instead to dismiss that claim without prejudice to be renewed in a later suit. We conclude that the disposition of the fee issue was not a final determination and left interlocutory the order under review. Although we again condemn the foisting of jurisdiction upon this court in the absence of a final order, see Vitanza v. James, 397 N.J.Super. 516, 938 A.2d 166 (App.Div. 2008), in these particular circumstances we find it equitable to grant leave to appeal out of time, and we reverse the partial summary judgment.

I
The record reveals that Grow is engaged in the manufacture and distribution of nutrients and nutritional supplements. Chokshi is a chemist, who was employed by Grow in 1979 and eventually became its director of research, development and quality control. Grow claims that, during his employment, Chokshi learned of Grow's alleged trade secrets and proprietary processes.
In 1982, Chokshi executed a confidentiality agreement (the 1982 agreement) by which he agreed he would not "at any time, either during the period of his employment with [Grow] or at any time thereafter in any fashion, form or manner, either directly or indirectly, divulge, disclose or communicate to any person, firm or corporation in any manner whatsoever any information of any kind, nature or description concerning any matters affecting or relating to the business of [Grow], including ... all product formulations and other trade secrets...."
In October 1991, Chokshi and two others terminated their relationship with Grow and formed Bio-Foods, Ltd. In late November 1999, Grow sued Bio-Foods, Chokshi and the other former employees, alleging they unfairly competed with Grow from 1991 to 1999. Among other things, Grow asserted claims of product disparagement, trade libel, and the conversion of Grow's trade secrets. The parties to that suit eventually resolved their differences and executed a document entitled "Release, Covenant Not To Sue and Settlement Agreement" (the settlement agreement), which released "all claims against Releasees which Grow ever had, now has or hereafter can, shall or may have, for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to and including the date of Grow's execution of this Agreement." The settlement agreement was executed on December 21, 2001.
The action at hand was commenced by Grow against Chokshi and Pharmachem on *257 July 27, 2005. In its pleadings, Grow alleged that "[o]n or before the time of the settlement" Chokshi became associated with Pharmachem and again resumed his alleged course of unfair competition through use of Grow's alleged trade secrets and proprietary information. Grow alleged it had recently discovered that "between January 9, 2001 and May 31, 2005," Pharmachem and Chokshi applied for five patents "that are based upon Grow's processes and formulas, which are Grow's trade secrets and proprietary information" learned by Chokshi during his employment with Grow.
Chokshi and Pharmachem denied these allegations and filed a counterclaim alleging that Grow had breached the settlement agreement by commencing this action. The counterclaim also sought, among other things, a judgment declaring unenforceable the 1982 agreement and an award of counsel fees based on the settlement agreement. In this latter respect, the settlement agreement contains the parties' stipulation that should Grow commence an action barred by its covenant not to sue, then the parties encompassed by the settlement agreement's terms "shall be entitled to recover from Grow all their attorney's fees, expenses and costs of suit incurred in connection therewith."
After a period of discovery, the parties filed dispositive motions. Grow moved for partial summary judgment, seeking a declaration that neither Chokshi nor Pharmachem was entitled to an award of attorneys' fees. Chokshi and Pharmachem moved for summary judgment, arguing, among other things, that Grow's suit was barred by the settlement agreement, the absence of any proof of a trade secret, and the lack of any duty that would prohibit the revelation of any information learned while Chokshi was employed by Grow. In ruling on these motions, the trial judge rendered separate written opinions on December 22, 2006.
In the judge's first written opinion, he granted that part of Grow's motion that sought a dismissal of Pharmachem's counterclaim for an award of attorneys' fees based on the settlement agreement. The judge reasoned that Pharmachem was not a signatory to the settlement agreement and did not fall within the settlement agreement's description of the class of persons entitled to its benefits. The judge, however, rejected Grow's argument that Chokshi was not entitled to fees based upon the terms of the settlement agreement. The judge recognized that it was "conceded Chokshi has not paid for any legal fees and/or costs associated with this litigation," because they were paid by Pharmachem. However, the judge determined that fees may still be awarded even though the litigation was financed by others.
By way of his second opinion, the judge held that the settlement agreement, which encompassed "extraordinarily broad language," barred all the claims brought by Grow against Chokshi and Pharmachem, and warranted the entry of summary judgment in their favor. The judge did not explain how the settlement agreement was broad enough to bar the claims against Pharmachem, which was not a signatory to the settlement agreement, but not broad enough to permit an award of fees based upon Grow's alleged breach of the agreement, as he held in his first opinion. Because he concluded that the settlement agreement barred Grow's claim, the judge did not rule upon the other arguments posed by Chokshi and Pharmachem in support of their motion for summary judgment.[1]
*258 The judge engaged in a status conference with counsel on December 22, 2006, the day the motions were decided. At that time, the parties had not received the judge's written opinions, but at the start of the hearing, the judge indicated the upshot of his rulings and then asked for comments about the future course of the suit. At the time, the case was scheduled for trial on January 2, 2007.
Stating that the only remaining issue concerned the quantification of Chokshi's legal fees, the judge said, "I don't see, subject to [c]ounsel's input, how the matter can proceed on January 2nd which is the assigned date and I am not prepared to adjourn the trial date." He also indicated that because the amount of the fees sought was a matter that had not been explored in discovery, for obvious reasons, he did not think it fair to proceed to trial on January 2, 2007:
Now it would appear to me that [Grow] has due process rights to explore what's "reasonable"? The defendant[s'] posture has been: We cannot determine our bills until the matter is concluded the substantive matter, i.e. [a determination of the settlement agreement's impact on the suit]. We have a trial that's scheduled on January 2nd and I've already indicated I'm not prepared to adjourn that trial. I think in fairness to [Grow] ... that [Grow] ... [is] entitled to explore the legal fees; whether that's by definition of counsel, a review of billing, invoices, et cetera, et cetera.
Now I can't tell from this record what has been done, I know that Mr. Chokshi, I think it was in August of 2006, testified that to that point his counsel had been paid in excess of $500,000 by Pharmachem but I don't think I have anything else. I don't think I have billing slips, billing records, certifications from counsel and/or the like, it therefore, at least at first blush does not appear possible to try that which remains on January 2nd.
In accurately outlining the circumstances, the judge recognized that the remaining issue was not trial-ready; in addition, because the ascertaining of whether any party was entitled to fees, and from whom, could not be understood until the judge rendered his decision on the other substantive issues on December 22, 2006, the judge correctly realized that the parties' inability to try the case eleven days later was due to no one's fault or dilatory conduct.
Obviously, the trial should have been adjourned and a brief period of discovery permitted regarding the quantum and reasonableness of the fees sought by Chokshi. What occurred at the December 22, 2006 hearing reveals, however, that the trial date was the one thing that the judge would not alter. In short, the judge realized that a trial on the remaining issue could not fairly be conducted on January 2, 2007, but he steadfastly refused to adjourn it. As a result of the quandary created by his intractable view of the trial date, the judge suggested that the counsel fee claim be dismissed without prejudice so that it could be refiled in a new lawsuit; he also indicated he would exempt the parties from the impact of the entire controversy doctrine that would otherwise arise in the second suit.
The December 22, 2006 hearing concluded with no clear indication from the parties as to their consent to this approach,[2] but ultimately the judge entered *259 an order, on January 24, 2007, which adhered to his suggestion that Chokshi's fee claim be dismissed without prejudice; the order contains the following provision:
Although Chokshi's counsel stated at the December 22, 2006 hearing that Chokshi was prepared to proceed to trial on January 2, 2007 on [c]ount [o]ne of Chokshi's [c]ounterclaim on the issue of the amount of [a]ttorneys' [f]ees, it is the ruling of this court that to require ... Grow to proceed to trial as to the quantification of [a]ttorneys' [f]ees would be a denial of Grow's due process rights, and that the court would permit discovery respecting same, accordingly, the court is hereby dismissing Chokshi's [f]irst [c]ount of his [c]ounterclaim without prejudice. It is hereby further ordered that the filing of any subsequent action by Chokshi against Grow seeking the quantification of [a]ttorneys' [f]ees, expenses and costs, as set forth in this order (including without limitation the entry of judgment regarding same), shall not be barred by Rule 4:30A, or by operation of the [e]ntire [c]ontroversy [d]octrine. Grow has the right to dispute the amount of the claim, and in the event that Chokshi does not file a claim to determine the amount of [a]ttorneys' [f]ees, expenses and costs within six years of the date this order is entered, plus allowance for any applicable tolling of said limitation period, then said claim shall be barred. This court shall assume jurisdiction of any said action filed by Chokshi, if so requested, which shall be presided over and be determined by the [trial judge], without a jury.
The order also contained a dismissal of that part of the counterclaim that sought declaratory relief regarding the enforceability of the 1982 agreement, even though the judge's written decisions provided no rationale for that disposition.
Taking the position that the January 24, 2007 order was a final order, both Grow and Pharmachem appealed. Soon before Grow filed its notice of appeal, however, Chokshi moved for an order compelling Grow to file a supersedeas bond as security pending Grow's anticipated appeal. Even though no monetary award had been entered against Grow, and even though Grow had not sought a stay pending appeal, the judge directed Grow to post a supersedeas bond in the amount of $650,000. In fixing the amount of the bond, we discern from the judge's oral decision that he believed the award sought by Chokshiwho had yet to file the new suit authorized by the January 24, 2007 orderwould likely be quantified in a similar amount. The judge also based his authority to compel the posting of a bondeven absent a motion for a stayon a perceived inequity in ruling otherwise, i.e., that he had generously dismissed the claim without prejudice rather than force Grow to trial on January 2, 2007, which he would not adjourn, even though he also recognized that trying the issue of counsel fees at that time would deprive Grow of due process, as the January 24, 2007 order itself plainly acknowledges. The judge said in his oral decision:
As [Grow] has conceded that it will be prosecuting an appeal, the [c]ourt is satisfied that under [R. 2:9-6] the [c]ourt has the authority to set a [supersedeas] bond, and the [c]ourt is further satisfied it is appropriate to so set a bond. That is, as the [c]ourt honored [Grow's] request to not compel [Grow] to proceed to trial, to confront the issue of legal fees as that issue had not been fully discovered, it would be inequitable to permit [Grow] to proceed with impunity.
Once again, the judge's refusal to adjourn the trial date became the tail that wagged the dog and caused Grow to suffer the expense of a bond despite having never sought a stay that it did not need.
*260 In its appeal, Grow argues, among other things, that: the settlement agreement did not bar its claim against Chokshi, because it does not preclude claims based on conduct occurring after execution of the settlement agreement; Chokshi is not entitled to an award of fees because he did not personally incur any such expenses; and the requirement that Grow post a supersedeas bond was erroneous because no money judgment had been entered and because Grow had not sought a stay pending appeal.
Chokshi cross-appealed, arguing that the judge mistakenly dismissed his counterclaim for declaratory relief regarding the enforceability of the 1982 agreement. Pharmachem also cross-appealed, arguing that the judge adopted an unduly restrictive interpretation of the settlement agreement in concluding that Pharmachem was not a party entitled to fees for Grow's breach of the settlement agreement. Like Chokshi, Pharmachem argues that the judge erred in dismissing its counterclaim for a declaratory judgment regarding the 1982 agreement.

II

A
The chief thrust of our judicial systemadopted in order to eliminate the unnecessary complications and convolutions of the system it replacedwas to promote efficiency, fairness and the reduction of needless costs and delays. R. 1:1-2. See also Ragusa v. Lau, 119 N.J. 276, 283-84, 575 A.2d 8 (1990). The Supreme Court recognized that these goals require that the judicial process, as described by Justice Brennan, chiefly consist of "a single and complete trial with a single and complete review." Trecartin v. Mahony-Troast Constr. Co., 21 N.J. 1, 6, 120 A.2d 733 (1956). One of the ways intended to achieve this goal was the elimination of "an unseemly parade to the appellate courts," which would occur if our courts adopted an indulgent approach to interlocutory review. Ibid. (quoting Dickinson Indus. Site v. Cowan, 309 U.S. 382, 389, 60 S.Ct. 595, 599, 84 L.Ed. 819, 825 (1940)). As a result, our judicial system recognizes that, with very few exceptions,[3] only an order that finally adjudicates all issues as to all parties is a final order and that an interlocutory appeal is permitted only by leave of our appellate courts. R. 2:2-3. To ensure that interlocutory review would be limited to those exceptional cases warranting appellate intervention, the sole discretion to permit an interlocutory appeal has been lodged with the appellate courts. Brundage v. Estate of Carambio, 195 N.J. 575, 599-600, 951 A.2d 947 (2008).
*261 Notwithstanding these well-established principles, numerous examples in which trial courts have taken steps to attempt to create appellate jurisdiction can be found. We have long labored to close loopholes used in seeking to create a basis for an appeal of an interlocutory order without our leave.
One notable example relates to the authority trial judges have to certify certain interlocutory orders as final. See R. 4:42-2. The frequent mistaken exercise of that authority produced a plethora of decisions from this court,[4] and led to rule revisions, which have clarified that certification is permitted only if the interlocutory order is "subject to process to enforce a judgment pursuant to R. 4:59 if it were final" and fits one of the three grounds for certification expressly identified in the rule. Janicky, supra, 396 N.J.Super. at 550, 935 A.2d 803 (quoting R. 4:42-2).
We have also held that a trial judge's placing of an issue "in abeyance" did not imbue an interlocutory order with the cloak of finality. In General Motors Corp. v. City of Linden, 279 N.J.Super. 449, 455, 653 A.2d 568 (App.Div.1995), rev'd on other grounds, 143 N.J. 336, 671 A.2d 560 (1996), for example, the parties appealed an order that denied a motion for attorneys' fees without prejudice and declared the issue to be "held in abeyance." We found such an order to be interlocutory; however, because "the appeal ha[d] been fully briefed and argued," we granted leave to appeal out of time. Id. at 455-56, 653 A.2d 568. We found in In re Estate of Johnson, 240 N.J.Super. 134, 136, 572 A.2d 1163 (App. Div.1990), that an order, which granted partial summary judgment but reserved decision on other matters, was also interlocutory; in that case we found it equitable to grant leave to appeal out of time because the appellant had filed a motion for leave to appeal, which it later withdrew after mistakenly assuming the order in question was final. Id. at 136-37, 572 A.2d 1163.
In addition, we have encountered circumstances where a party blatantly appealed an interlocutory order without seeking our leave. In those situations, we would often find that the appeal would be calendared for disposition before we came to appreciate the order's interlocutory nature. In the past, our tendency was to grant leave to appeal out of time in such instances when the matter had been briefed and fully submitted for a disposition on its merits. See Caggiano v. Fontoura, 354 N.J.Super. 111, 125, 804 A.2d 1193 (App.Div.2002). More recently, citing our burgeoning calendars, we have declared our intention to be less tolerant *262 when an aggrieved party has mistakenly filed a notice of appeal and the opponent has mistakenly failed to move for dismissal. See Vitanza, supra, 397 N.J.Super. at 518-19, 938 A.2d 166; Parker v. City of Trenton, 382 N.J.Super. 454, 458, 889 A.2d 1079 (App.Div.2006). We again iterate that appellate resources are too scarce for this court to be so forgiving of fundamental departures from the finality rule.
Although similar to orders that placed unadjudicated claims "in abeyance," which we encountered in General Motors Corp., supra, 279 N.J.Super. at 455, 653 A.2d 568, and Estate of Johnson, supra, 240 N.J.Super. at 136-37, 572 A.2d 1163, the order under review did more than leave issues for consideration by the trial court after appellate disposition. Here, there is no question that the order under review intended to eliminate any further litigation in this case in the trial court absent our remand on any of the issues reviewed. This particular aspect has led the parties to argue that the order actually is final, because it finally disposed of all the issues raised in this lawsuit. We find this to be a distinction without a difference and condemn the creation of the appearance of finality through the dismissal without prejudice of unadjudicated claims that have not been concluded in fact but are left to be resurrected in a new suit. To have the finality required to create appellate jurisdiction, an order must not only completely dispose of all pleaded claims as to all parties, but all its dispositions must also be final. See Lawler v. Isaac, 249 N.J.Super. 11, 17, 592 A.2d 1 (App.Div. 1991) (holding that "[w]hile a voluntary dismissal may be a judgment, it is not necessarily a final judgment"); see also Caggiano, supra, 354 N.J.Super. at 123, 804 A.2d 1193. In entering an order that merely pretends to be final, and instead permits the adjudication of some pleaded issue in a later lawsuit, a trial judge inappropriately assumes the authority vested only in the appellate courts to determine when an interlocutory appeal is appropriate.[5]
Interlocutory review is "highly discretionary" and is to be "exercised only sparingly," State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76 (1985), because of the strong policy "that favors an uninterrupted proceeding at the trial level with a single and complete review," S.N. Golden Estates, supra, 317 N.J.Super. at 88, 721 A.2d 307. The discretion to permit an interlocutory appeal must rest solely with the appellate courts, which are in a far better position to gauge whether the case is worthy of such an expenditure of judicial resources. As Justice Hoens said for the Court in Brundage, supra, 195 N.J. at 599, 951 A.2d 947, the appellate court's exercise of its "considerable discretion" turns on whether leave to appeal will "prevent the court and the parties from embarking on an improper or unnecessary course of litigation." Ibid. This exercise requires that the moving party "must establish, at a minimum, that the desired appeal has merit and that `justice calls for [an appellate court's] interference in the cause'"; such an approach necessarily precludes the granting of leave merely to "correct minor *263 injustices." Ibid. (quoting Romano v. Maglio, 41 N.J.Super. 561, 567-68, 125 A.2d 523 (App.Div.), certif. denied, 22 N.J. 574, 126 A.2d 910 (1956), cert. denied, 353 U.S. 923, 77 S.Ct. 682, 1 L.Ed.2d 720 (1957)).
The methodology of dismissing unadjudicated claims without prejudice in order to create the appearance of a final order confounds the manner in which appellate jurisdiction was meant to arise in our judicial system. In the present circumstances, we conclude that the order in question is not a final order and we repeat the admonishment expressed in CPC Int'l, Inc. v. Hartford Acc. & Indem. Co., 316 N.J.Super. 351, 366, 720 A.2d 408 (App.Div.1998), certif. denied, 158 N.J. 73, 726 A.2d 937 (1999), that the dismissal of claims without prejudice must not become a device "to foist jurisdiction upon this court" over what is, in reality, an interlocutory order.

B
As we have said, the order under review has only the appearance of finality. The trial judge recognized that his December 22, 2006 rulings had not adjudicated all the claims raised in the pleadings. He had determined that Chokshi was entitled to an award of counsel fees based upon the terms of the settlement agreement, but he did not quantify the amount of the fees, and instead placed the parties in a difficult position by refusing to adjourn the January 2, 2007 trial date despite his recognition that the trial could not in fairness go forward at that time.[6]
Despite our rejection of the methodology adopted in the trial court for closing this case, and our disapproval of attempts to create appellate jurisdiction where it does not exist, which has most recently led us to reject our former liberal dispensing of leave to appeal out of time, see Vitanza, supra, 397 N.J.Super. at 519, 938 A.2d 166, the record reveals that the parties were not the catalysts for the order's offending aspects. The judge's repeated insistence, during the status conference of December 22, 2006, that the trial date would not be adjourned created the circumstance in which the only reasonable resolution was the parties' acceptance of the dismissal without prejudice of the fee claim.
Contrary to the circumstances that prompted our condemnation in Parker and Vitanza, we cannot entirely place the blame for the perfecting of this interlocutory appeal on the parties. Both sides felt aggrieved by portions of the order and had an interest in seeking our review, and, because the judge had precluded any further litigation in the trial court by dismissing the unadjudicated counsel fee issue, the parties had little choice but to proceed to this court. Although the parties should have brought this circumstance to our attention informally or by motion immediately after filing their notices of appeal and cross-appeal,[7] we conclude it would be *264 inequitable to render meaningless the parties' efforts in this court. Our stated preference is to dismiss the appeal of an interlocutory order that has been filed without our leave. See Vitanza, supra, 397 N.J.Super. at 519, 938 A.2d 166; see also Morella v. Grand Union/N.J. Self-Insurers Guar. Ass'n, 391 N.J.Super. 231, 238 n. 3, 917 A.2d 826 (App.Div.2007), aff'd o.b., 193 N.J. 350, 939 A.2d 226 (2008). However, we must conclude that in this case the parties were neither the impetus for nor the principal movers in the creation of the artificially-final order. Accordingly, we will grant leave to appeal out of time and rule on the merits of the appeal and cross-appeal.

III
In reaching the merits of the order under review, we focus on three substantive determinations summarily reached by the trial judge regarding the impact of the settlement agreement on the parties' claims, namely, the judge's rulings that: (a) the settlement agreement precluded any future suit by Grow against Chokshi for unfair competition arising from his use of trade secrets or proprietary information; (b) assuming Grow's breach of the covenant not to sue, the settlement agreement permitted an award of counsel fees to Chokshi notwithstanding he did not personally incur liability for fees; and (c) Pharmachem is not within the class of persons described in the settlement agreement who were entitled to an award of counsel fees based on Grow's breach of its covenant not to sue. In addition, we consider (d) the judge's dismissal, without explanation, of that part of the counterclaim that sought declaratory relief regarding the 1982 agreement, and (e) the order that compelled Grow to file a supersedeas bond.

A
In reviewing the partial summary judgment that dismissed Grow's amended complaint, we must assume that Grow's evidential assertions are true and we must give Grow the benefit of all reasonable inferences that flow therefrom. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App. Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
In granting partial summary judgment, the judge invoked numerous policy and general contract principles that certainly have application in ascertaining the meaning and scope of the settlement agreement. That is, in this case it is appropriate to consider: that the settlement of lawsuits, as a policy matter, ranks high, Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990); that a settlement agreement between litigating parties is a contract, Pascarella v. Bruck, 190 N.J.Super. 118, 124, 462 A.2d 186 (App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983); that courts do not rewrite contracts in order to provide a better bargain than contained in their writing, Christafano v. N.J. Mfrs. Ins. Co., 361 N.J.Super. 228, 237, 824 A.2d 1126 (App.Div.2003); and that unambiguous contracts are to be enforced as written, Atlantic Northern Airlines v. Schwimmer, 12 N.J. 293, 302, 96 A.2d 652 (1953). The judge concluded, in *265 applying these general truisms, that the scope of the settlement agreement is described through the use of extraordinarily broad language. He also correctly found that the settlement agreement's meaning is best understood by the parties' particular undertakingthe resolution of Grow's suit against Bio-Food, Chokshi and other former Grow employees. In this light, the judge concluded that the settlement agreement encompassedand thereby barredall the claims asserted by Grow.
In considering the surrounding circumstances, however, reference to the settlement agreement alone suggests a limitation not fully appreciated when partial summary judgment was entered. That is, the settlement agreement contains no acknowledgement of either the merit or lack of merit in Grow's claim that Chokshi possessed knowledge of Grow's alleged trade secrets and proprietary information. In other words, at that time, neither party conceded nor denied the existence of trade secrets or other proprietary information that was worthy of protection; neither party conceded nor denied that Chokshi possessed any such information; and neither party conceded nor denied there was a lack of merit to what Grow had alleged in that action. In short, the settlement agreement resolved none of the parties' disputes; it merely memorialized the parties' stipulation that the existing litigation would be ended, that certain consideration not revealed in the record would be paid by Chokshi and the other defendants, and that limits would be placed on any future litigation. The settlement agreement contains no stipulation that Chokshi was thereafter and forever free to utilize any trade secrets or proprietary information he may have learned through his employment with Grow. Moreover, the settlement agreement does not permit such an interpretation, which we discern from the judge's ruling here, that Chokshi was free to do as he wished with any alleged trade secrets or proprietary information after execution of the settlement agreement. The parties may have bought their peace as to all the conduct alleged prior to the execution of the settlement agreement, and they may have agreed there would be no future suits based on pre-December 21, 2001 conduct, but the settlement agreement contains no stipulation that Grow would not be permitted to sue Chokshi for any unlawful conduct occurring after December 21, 2001. Indeed, the clarity of the agreement's limitation on its application only to pre-December 21, 2001 activities demonstrates that post-December 21, 2001 activities could be the subject of a future suit without triggering a breach of the settlement agreement.
This unmistakable conclusion as to the scope of the settlement agreement compels consideration of two other discrete issues. First, we must consider whether Grow's claims in the action at hand consist of, in whole or in part, claims that arose after execution of the settlement agreement. And second, we must consider whether there is merit to the legal argument posed by Chokshi and Pharmachem that, once a suit by a former employer against a former employee based on the misappropriation of a trade secret is completed, the former employer cannot again sue the former employee for similar future conduct.

(1)
The settlement agreement unambiguously reveals that Grow did not intend to absolve Chokshi of any improper disclosure of its alleged trade secrets or proprietary information after execution of the settlement agreement on December 21, 2001. As a result, we must determineassuming the truth of Grow's allegations and giving Grow the benefit of all reasonable inferenceswhether the complaint and its *266 amendments encompass wrongful conduct by Chokshi that occurred after December 21, 2001.
Grow's complaint and amended complaint allege that "between January 5, 2001 and May 31, 2005," Chokshi and Pharmachem "applied for and obtained at least five patents for processes and formulas that are based upon Grow's processes and formulas, which are Grow's trade secrets and proprietary information," and which "Chokshi learned of ..., in confidence, while Grow employed him." Grow also alleged that the applications for these patents were filed between September 25, 2001 and September 3, 2002, and patents were issued between September 24, 2004 and May 31, 2005. Chokshi and Pharmachem assert that the information upon which these patent applications were based was discussed and disclosed prior to the execution of the settlement agreement, but we observe that Chokshi acknowledged in answers to interrogatories that he "has had communication with patent counsel regarding his patents since December 21, 2001." The record on appeal, however, is generally unenlightening as to what was disclosed and when it was disclosed, let alone whether the information belonged to Grow and is entitled to protection.
In short, the record suggests that Grow's claim is based on both pre- and post-December 21, 2001 conduct; in light of the undisputed fact that the settlement agreement does not release conduct occurring after December 21, 2001, it cannot be said, as the judge held, that the settlement agreement barred all Grow's allegations. Because there is at best a genuine dispute about whether or to what extent Grow's allegations encompass conduct that occurred after December 21, 2001, partial summary judgment was precluded.[8]

(2)
Chokshi and Pharmachem argue that Grow's claims should be dismissed notwithstanding the scope of the settlement agreement because Grow previously sued Chokshi, Bio-Foods, and other former Grow employees, and, in their view, a former employer is entitled to only one such cause of action against a former employee, regardless of the possibility of subsequent disclosures of trade secrets or proprietary information.
Asserting that trade secret misappropriation is a cause of action based on the former employee's breach of confidence and loyalty, and not on the employer's property interest in the trade secret, Chokshi and Pharmachem argue that a second such claim is barred. They recognize that our courts have not spoken on this point, and rely upon case law from other jurisdictions, such as Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288, 293 (9th Cir.1969) (applying California law), where the court held
The fabric of the relationship [between employer and employee] once rent is not *267 torn anew with each added use or disclosure [of a trade secret], although the damage suffered may thereby be aggravated. The cause of action arises but once, and recovery for the wrong is barred within two years thereafter unless the statute has been effectively tolled.
See also Cadence Design Sys., Inc. v. Avant! Corp., 29 Cal.4th 215, 127 Cal. Rptr.2d 169, 57 P.3d 647, 651 (2002). Relying upon the fact that such a suit was previously commenced and resolved by settlement, Chokshi and Pharmachem argue that no new suit based upon misappropriation of a trade secret may be commenced.[9]
The California rule espoused in Monolith and Cadence, however, is not universally accepted. Indeed, few courts have even spoken on this particular issue. An alternative view was adopted in Underwater Storage, Inc. v. United States Rubber Co., 125 U.S.App.D.C. 297, 371 F.2d 950 (D.C.Cir.1966), cert. denied, 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967). There, the court held that the divulging of misappropriated trade secrets constitutes a continuing tort:
We do not believe that a misappropriator or his privies can "baptize" their wrongful actions by general publication of the secret. Nor do we believe that the fact of the destruction of the secret prevents the continued use by the misappropriator or his privies from being a continuing wrong vis-à-vis the original possessor of the secret. It is the continuing use of another's secret, wrongfully obtained, or used after knowledge that it has been wrongfully obtained, that makes the tort a continuing one. Once the secret is out, the rest of the world may well have a right to copy it at will; but this should not protect the misappropriator or his privies. Their gain is ill-gotten and the passage of time or publication to the rest of the world should not serve to cleanse their hands.
[Id. at 955.]
Other jurisdictions follow the Underwater approach. See General Precision, Inc. v. Ametek, Inc., 20 N.Y.2d 898, 285 N.Y.S.2d 867, 232 N.E.2d 862 (1967); Prescott v. Morton Int'l, Inc., 769 F.Supp. 404 (D.Mass.1990).
Our courts have not previously considered this point of law and we conclude that our adoption of one theory or the other, or a third, is not ripe for consideration. Initially, we observe that the conflicting theories appear to turn on whether a trade secret should be viewed as a property right or its misappropriation as a breach of a confidential relationship. Compare Underwater, supra, 371 F.2d at 954 (holding that "[t]he nature of a trade secret is such that, so long as it remains a secret, it is valuable property to its possessor") with Monolith, supra, 407 F.2d at 293 (holding that California law "does not treat trade secrets as if they were property"). It is not entirely clear where New Jersey law stands on that point. When considered, our courts have chosen not to put a fine point to the question, leaving instead an understanding that the right to enforce a *268 trade secret may be viewed in a number of ways:
Different grounds have indeed been assigned for the exercise of that jurisdiction [to enjoin disclosures of trade secrets]. In some cases it has been referred to property, in others to contract, and in others, again, it has been treated as founded upon trust or confidence, meaning, as I conceive, that the Court fastens the obligation on the conscience of the party, and enforces it against him in the same manner as it enforces against a party to whom a benefit is given the obligation of performing a promise on the faith of which the benefit has been conferred....
[Sun Dial Corp. v. Rideout, 16 N.J. 252, 260, 108 A.2d 442 (1954) (quoting Morison v. Moat, 68 Eng. Rep. 492, 498 (1851)).]
We also observed in one case that "[t]rade secrets are a peculiar kind of property," Trump's Castle Associates v. Tallone, 275 N.J.Super. 159, 163, 645 A.2d 1207 (App. Div.1994) (quoting In re Iowa Freedom of Information Council, 724 F.2d 658, 662 (8th Cir.1983)), but it is fair to conclude that our courts have yet to finally resolve the point upon which Monolith and Underwater disagreed.
As can be seen from the conflicting theories about the permissibility of a second suit for misappropriation, there is a need to obtain a better understanding of the details of Grow's claims, as well as an understanding of the allegations in the earlier suit, before determining whether the nature of the claims asserted against Chokshi in this action, assuming they survived the settlement agreement, requires that they now be barred. In short, the complex circumstances upon which this novel theory turns, which have not been thoroughly developed in the trial court, do not present a sufficient foundation for the entry of summary judgment. See, e.g., GNC Franchising, Inc. v. O'Brien, 443 F.Supp.2d 737, 749 (W.D.Pa.2006) (recognizing that, at times, a court should "follow the more prudent course of withholding judgment on the unsettled question of law until the issues are more clearly focused and the facts definitively found"); Petition of Bloomfield S.S. Co., 298 F.Supp. 1239, 1242 (S.D.N.Y.1969) (holding that summary judgment "is always a treacherous shortcut and ... [at times] too fragile a foundation for so heavy a load, [particularly] in cases posing complex issues of fact and unsettled questions of law"), aff'd, 422 F.2d 728 (2d Cir.1970). In adopting this cautious approach, we decline to determine whether to adopt the novel theory urged by Chokshi and Pharmachem by way of our review of a summary judgment, which was not even based on this point. The matter is best left for later consideration once a full and clear understanding of the facts is presented.

B
Our determination that the judge's interpretation of the settlement agreement was premature, and that it cannot be said, on this record, whether the claims asserted against Chokshi are all barred by the settlement agreement, renders premature a determination of whether or to what extent Grow may be liable to Chokshi for fees. Nevertheless, the discrete point raised by Grow to defeat Chokshi's claim for feesthat Chokshi may not recover fees because he has not paid fees to his attorneysis ripe for our consideration.[10]
*269 During his deposition and in answers to interrogatories, Chokshi disclosed that Pharmachem has paid his attorneys throughout the course of this litigation. In light of that fact, Grow argues that Chokshi can have no recovery of fees based on the settlement agreement, citing the general principle that a successful claim based on breach of contract requires not only the establishment of a contract and its breach but also damages. See, e.g., Coyle v. Englander's, 199 N.J.Super. 212, 223, 488 A.2d 1083 (App.Div.1985). Grow contends from this general rule of law that, because there is no dispute that Chokshi has not paid attorneys' fees, he cannot recover an award of attorneys' fees. We reject this argument.
The critical fact in this analysis is that Chokshi has incurred fees even if they were paid by another. Grow argues that fee awards permitted by contract in favor of a party, whose fees have been paid by another, have been based on some obligation on the payor's part to indemnify the benefited party, such as an insurance company or a successor in interest. Grow cites Schafler v. Fairway Park Condominium Ass'n, 147 Fed.Appx. 113 (11th Cir.2005), which the trial judge also relied upon, as such an example. We are not persuaded. The existence of an obligation on the part of the actual payor of fees to the benefited party is not relevant because, as a general matter, it would be inequitable for a person or entity in Grow's position to be able to avoid its contractual obligation to pay fees simply because another has provided financing to the wronged party. Quite simply, such a ruling could have in some cases the disturbing consequence of permitting a deep-pocketed party to wage extensive and ruinous litigation against a less well-to-do litigant, whose only chance of being made wholecompensation at the end of the day based upon the other party's contractual promise to pay feeswould be dashed if the impecunious litigant would have to demonstrate that he or she actually paid the attorneys' fees during the course of the litigation. We prefer the adoption of a rule that would permit a person less able to expend large sums to defend such an action[11] the flexibility to obtain the benefit of another's payment of fees without losing the valuable right to the shifting of fees in its favor for which it had previously bargained. Accordingly, we conclude that whatever arrangement Pharmachem has made with Chokshi regarding the payment of his fees is not relevant in ascertaining *270 whether or to what extent Grow is liable to pay fees to Chokshi, see, e.g., Automated Business Companies, Inc. v. NEC America, Inc., 202 F.3d 1353, 1355-56 (Fed.Cir. 2000); Tidewater Patent Development Co. v. Kitchen, 421 F.2d 680, 680-81 (4th Cir. 1970), just as the fee award due a prevailing party pursuant to a fee-shifting statute is "determined independently of the provisions of the fee agreement between that party and his or her counsel," Szczepanski v. Newcomb Medical Center, Inc., 141 N.J. 346, 358, 661 A.2d 1232 (1995).

C
This appeal also requires that we consider the dismissal of Grow's claims against Pharmachem. In concluding that the summary dismissal of those claims cannot stand, we first observe that the judge's two written decisions do not present a consistent view of the settlement agreement's scope. That is, in the first decision the judge broadly viewed the class of parties included, and determined that Pharmachem was a beneficiary of Grow's promise not to sue. However, in the second decision, the judge emphasized that Pharmachem was not a signatory to the settlement agreement and, for that reason, was not entitled to the benefits of Grow's agreement to pay counsel fees for a breach of the covenant not to sue. In moving for clarification, Grow alluded to this inconsistency. The judge, however, summarily rejected the argument without explaining why the settlement agreement ought to bar the suit against Pharmachem but not permit an award of fees to Pharmachem for a breach of Grow's promise not to sue. We cannot square the judge's separate rulings regarding the settlement agreement's scopeit would appear to either encompass or exclude an entity such as Pharmachem for all purposes.
The settlement agreement uses various terms in various locations within the four corners of the document to describe the parties entitled to its benefits. Its first sentence describes the agreement as being between Grow, and "all of its parents, subsidiaries, affiliates, officers, employees, successors and assigns," and Bio-Foods, as well as "all its parents, subsidiaries, affiliates, officers, employees, successors and assigns," Chokshi, and the other two former Grow employees. The preamble's second "whereas" provision, upon which Pharmachem greatly relies in support of its broad interpretation, provides further illumination by referring to Bio-Foods
as well as its present and former officers, directors, shareholders, executives, servants, employees and counsel, and each of its and their past, present and future parent and subsidiary corporations, divisions, affiliates, partners, joint ventures, predecessors, successors, assigns and insurers, and any other person, firm or corporation with whom any of them is now or may hereafter be affiliated, including the individual people named as co-defendants to the lawsuit (hereinafter collectively referred to as "Releasees") have disclaimed liability to Grow and categorically deny Grow's claims.
This description is certainly expansive. It also, however, inconsistently incorporates more individuals and entities than would appear to fit the description in the agreement's first sentence, or the description in a later provision, which was also intended to define the scope of the parties to the settlement agreement.[12] These broad but *271 inconsistent definitions suggest an ambiguity that would not appear to be amenable to resolution without information relating to its formation and other existing extrinsic evidence.
In arguing for its inclusion within the phrases used to describe the "releasees," Pharmachem alludes to "assign" and "affiliate" as the words that best fit its relationship to the settlement agreement. Pharmachem interchangeably argues that it is either Chokshi's assignee because Chokshi assigned his inventions and patents to Pharmachem, or "affiliated" with Chokshi because Chokshi is a chemist who consults with Pharmachem. We have no doubt that these are plausible interpretations of the breadth of the settlement agreement, as are others. But they are not the only plausible interpretations. In reversing the partial summary judgment on this point, we do not mean to suggest that, after an airing of the parties' contentions regarding the meaning of the settlement agreement, the factfinder could not draw those conclusions. We only suggest it is not implausible to interpret the parties' writing as limiting the word "assign" to an assignment of rights to the settlement agreement, not an assignment of anything else. By the same token, the reference to "affiliate" may be interpreted as broadly or as narrowly as a reader may choose; without illumination through the presentation of extrinsic or parol evidence, there can be no certainty about the connotation the parties intended when they included this word in their settlement agreement to describe who may be covered.
In short, we question whether the parties to the settlement agreement intended the expansive scope adopted by the trial judge. The descriptive words appear to be boilerplate and it is not clear from the setting whether Grow actually intended to make promises to persons and entities that had not appeared, been involved in the suit, or provided the consideration from the releasees required by the settlement agreement.
Moreover, it bears noting that the reference to Bio-Foods or all the related persons and entities enumerated in the lengthy description in the above-quoted paragraph, describes only those who "have disclaimed liability to Grow and categorically den[ied] Grow's claims." Because this is one of the ways the parties defined the term "releasees," Pharmachem may be correct about its importance. But, in advocating that it is encompassed by the broad terms used, Pharmachem has not persuaded us that there is no genuine dispute that the settlement agreement covers all assigns and all affiliated persons or entities. The very language relied upon suggests that the class of broadly-defined persons and entities in this provision is limited to those who have disclaimed liability and denied Grow's claims. Because we have been referred to no evidence that would suggest Pharmachem ever disclaimed liability to Grow or denied Grow's claims against Bio-Foods and the others prior to the settlement agreement's execution, we cannot foreclose the argument that the settlement agreement did not intend to encompass Pharmachem because it does not fit that more limited, plausible interpretation of the settlement agreement's scope.
*272 Other language in the settlement agreement further suggests the plausibility of a less expansive interpretation than that adopted by the judge in granting partial summary judgment. For example, the paragraph that circumscribes the released claims indicates that the release was given "[i]n exchange for the consideration to be provided by Releasees." This language may have relevance in ascertaining the scope of those who are "releasees," i.e., those persons or entities who provided the consideration received by Grow. There is no evidence in the record to suggest that Pharmachem paid or contributed to the funds paid to Grow in accordance with the settlement agreement.
It is true that whether a contract provision is clear or ambiguous is a question of law. Nester v. O'Donnell, 301 N.J.Super. 198, 210, 693 A.2d 1214 (App. Div.1997). Ambiguity is determined not by adopting an interpretation preferred by the judge but by determining whether the provision in question is "susceptible to at least two reasonable alternative interpretations." Ibid. (quoting Kaufman v. Provident Life & Cas. Ins. Co., 828 F.Supp. 275, 283 (D.N.J.1992), aff'd, 993 F.2d 877 (3d Cir.1993)); see also Cooper River Plaza East, LLC v. Briad Group, 359 N.J.Super. 518, 528, 820 A.2d 690 (App.Div.2003). Because the scope of the settlement agreement cannot be determined by solely relying upon the parties' writing, which may be plausibly interpreted in different ways, summary judgment in favor of Pharmachem on this point was precluded.

D
The order under review states that the counterclaim for declaratory relief regarding the enforceability of the 1982 agreement had been dismissed. However, there is nothing in the judge's two written decisions of December 22, 2006, or in any of his oral decisions that followed, which would indicate why.
A trial judge is obligated to provide an oral or written statement of the reasons for such a ruling. R. 1:7-4; see also Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980); Shulas v. Estabrook, 385 N.J.Super. 91, 96, 895 A.2d 1234 (App.Div. 2006). In the absence of an expressed rationale for the dismissal of these claims, we decline to consider the matter for the first time on appeal.
To the extent the judge may have dismissed the claim for declaratory relief because he found it moot in light of his other rulingsa conclusion that is arguably discernible from the judge's opinionsour reversal of partial summary judgment eviscerates its possible mootness. In either event, a remand for further proceedings on this claim is warranted.

E
Grow has also asserted that the trial judge erred in requiring, by way of his April 4, 2007 order, that Grow post a $650,000 bond pending its appeal. We agree.
The question may appear to be moot in light of the fact that with the disposition of this appeal, the order has no further relevance and will be vacated by operation of law. However, we deem it appropriate to briefly comment.
A trial court, of course, is empowered to condition a stay of a judgment pending appeal by requiring an appellant to post a supersedeas bond in order to protect the respondent from the loss of the use of funds otherwise immediately due. R. 2:9-5; Courvoisier v. Harley Davidson of Trenton, Inc., 162 N.J. 153, 158, 742 A.2d 542 (1999); Hudson City Sav. Bank v. Hampton Gardens, Ltd., 88 N.J. 16, 20, *273 438 A.2d 323 (1981). Here, as has been demonstrated, those fundamental circumstances for the imposition of a bond requirement were not present. Grow never sought a stay, and no money judgment was entered because the judge had deliberately relegated that issue to a future lawsuit. Nevertheless, the judge imposed on Grow the obligation to post a bond in an amount that had never been awarded to Chokshi. The judge erred in this regard.
Absent the entry of a money judgment in Chokshi's favor against Grow, the requirement that Grow post a bond failed to conform to the purpose of the rule and was purely punitive in nature. As the judge's oral decision reveals, he believed the bond was equitably required because it was no fault of Chokshi's that his claim was not reduced to a money judgment. As the judge indicated, the dismissal of the claim for fees without prejudice spared Grow the prejudice of going to trial when it was not prepared to defend the claim so soon after the summary judgment rulings defined the issues; otherwise, the judge held, it would be unfair to allow Grow to prosecute its appeal "with impunity." The fact of the matter is, however, that the inequity of which the judge spoke was the product of his refusal to adjourn the trial date.
The order was also erroneous because Grow never sought a stay. A trial court is not empowered to compel the posting of a bond against a party that has not sought a stay pending appeal. The applicable rules recognize that at times a judgment debtor should be provided with a stay of execution on the judgment during the pendency of an appeal; this avoids injury to the judgment debtor, who might ultimately obtain a reversal of the judgment, if the judgment creditor is permitted to execute on the judgment before the appellate court has an opportunity to review the case. Courvoisier, supra, 162 N.J. at 158-60, 742 A.2d 542. The prejudice to the judgment creditor caused by a delay in the right to execute on the judgment during the appeal is offset by the posting of a bond, normally in the amount of the judgment plus the amount of interest that would accrue on the judgment during the pendency of the appeal. Id. at 158, 742 A.2d 542; Hudson City Sav. Bk., supra, 88 N.J. at 20-22, 438 A.2d 323. Because the filing of an appeal does not automatically stay a judgment except in limited circumstances not present here, a stay must be affirmatively sought. Upon a determination that the imposition of a stay is appropriate, trial courts will then condition its continuation upon the posting of a bond or other security. In short, the power to compel the posting of a supersedeas bond presupposes that the appellant has actually requested a stay.
Here, the order in question merely compelled the posting of a bondeven though Grow did not seek a stay and did not need a stay because it had not been ordered to pay money to either defendantbecause Grow intended to appeal. This issue does not require our consideration of whether the judge did or did not abuse his discretion. The judge had no discretion to compel the posting of a bond in these circumstances; the judge exceeded his authority in entering the April 4, 2007 order.

IV
With one exception, the order granting partial summary judgment is reversed in all respects and that part of the order, which compelled Grow to post a supersedeas bond, is also reversed. We affirm only the judge's determination that there is no merit to Grow's contention that Chokshi was required to actually expend counsel fees in order to obtain an award of fees pursuant to the settlement agreement. In light of these determinations, we need not *274 reach Grow's argument that it was deprived of due process when the judge held it liable to Chokshi for counsel fees. That particular point has been rendered moot.
We also do not reach the arguments of Chokshi and Pharmachem that Grow's claims should be dismissed for reasons other than those based on the covenant not to sue contained in the settlement agreement, or the arguments relating to the enforceability of the 1982 agreement. These contentions may still be pursued in the trial court.
We have commented but have not ultimately decided whether Grow's claim of the misappropriation of its alleged trade secrets and proprietary information should be barred simply because Grow made similar claims against Chokshi, Bio-Foods and other former Grow employees in an earlier suit. The trial court may also consider these contentions following our remand.
The matter is remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.
NOTES
[1] Chokshi and Pharmachem also argued that Grow's claims were not supported by proof of trade secrets or proprietary information or by proof of unfair competition, conversion and conspiracy, or were otherwise barred by the doctrines of laches, equitable estoppel and unclean hands.
[2] The judge also suggested that the parties consider arbitration of the fee dispute.
[3] We are mindful there are exceptions to the rule that only orders, which resolve all issues as to all parties, are appealable as of right. See R. 2:2-3(a); Wein v. Morris, 194 N.J. 364, 380, 944 A.2d 642 (2008) (amending the rule to add an order compelling arbitration as an interlocutory order deemed final for appeal purposes); Moon v. Warren Haven Nursing Home, 182 N.J. 507, 517-18, 867 A.2d 1174 (2005) (holding that an order permitting service of a late notice of claim on a public entity was interlocutory and not appealable, but referring the matter to the Civil Practice Committee for further consideration; the rule has since been amended to permit an order granting or denying a motion to extend the time to file a notice of tort claim to be appealable as of right). As can be seen, these few exceptions to the rule of finality actually "promote judicial economy and assist the speedy resolution of disputes." Wein, supra, 194 N.J. at 380, 944 A.2d 642. The order in question here fits none of the rule's exceptions and hardly has the effect of promoting judicial economy or speeding the resolution of the disputes between the parties; to the contrary, the order under review resolved only some of the parties' disputes and left others to be litigated in yet another lawsuit with, perhaps, another appeal on the distant horizon.
[4] As we indicated in Janicky v. Point Bay Fuel, Inc., 396 N.J.Super. 545, 551-52, 935 A.2d 803 (App.Div.2007), inappropriate certification of interlocutory orders has been a persistent problem for many years. See Tradesoft Techs., Inc. v. Franklin Mut. Ins. Co., 329 N.J.Super. 137, 141, 746 A.2d 1078 (App. Div.2000); D'Oliviera v. Micol, 321 N.J.Super. 637, 729 A.2d 1084 (App.Div.1999); S.N. Golden Estates, Inc. v. Continental Cas. Co., 317 N.J.Super. 82, 721 A.2d 307 (App.Div. 1998); Fu v. Fu, 309 N.J.Super. 435, 707 A.2d 473 (App.Div. 1998), rev'd on other grounds, 160 N.J. 108, 733 A.2d 1133 (1999); Hallowell v. Am. Honda Motor Co., 297 N.J.Super. 314, 688 A.2d 110 (App.Div. 1997); Bloom v. Clara Maass Med. Ctr., 295 N.J.Super. 594, 685 A.2d 966 (App.Div.1996); Cobo v. Mkt. Transition Facility, 293 N.J.Super. 374, 680 A.2d 1103 (App.Div. 1996); Kurzman v. Appicie, 273 N.J.Super. 189, 641 A.2d 566 (App. Div.1994); Taylor v. Gen. Elec. Co., 208 N.J.Super. 207, 505 A.2d 190 (App.Div.), certif. denied, 104 N.J. 379, 517 A.2d 388 (1986); DiMarino v. Wishkin, 195 N.J.Super. 390, 479 A.2d 444 (App.Div. 1984); Delbridge v. Jann Holding Co., 164 N.J.Super. 506, 397 A.2d 356 (App.Div. 1978); Leonardis v. Bunnell, 164 N.J.Super. 338, 340, 396 A.2d 357 (App.Div. 1978), certif. denied, 81 N.J. 265, 405 A.2d 810 (1979).
[5] We have no means for ascertaining the judge's intentions here, but no matter how well-intended, such an order disserves not only the efficient administration of justice but also the interests of the parties. The parties' ability to seek this court's review of what appears to be a final order is, as a result of such an order, bathed in uncertainty. And the parties' desire to litigate all their claims within the confines of a single lawsuit, which is the chief goal of our judicial system, is dashed by a trial judge's desire to rid his calendar of the casethus guaranteeing the filing of another case, at additional expense and delay to the parties.
[6] The trial date was set for the first business day following the intervening holidays. Because, by its very nature, the issue of counsel fees had not been the subject of exploration in discoverybecause fee entitlement turned on the resolution of the substantive issuesthe judge's insistence in retaining the existing trial date represented an abuse of discretion.
[7] As officers of the court, the attorneys for both sides in such a circumstance are obligated to bring to our attention any uncertainties about the existence of appellate jurisdiction over a matter lodged with us. See, e.g., Caggiano, supra, 354 N.J.Super. at 124, 804 A.2d 1193. We respectfully commend to the Civil Practices Committee consideration of a mechanism by which that duty may be more regularly triggered. For example, it might be helpful to have the parties to an appeal disclose in their case information statements the true meaning of a provision that dismisses an unadjudicated claim without prejudice. We, at times, encounter appeals from orders that contain dismissals without prejudice of certain aspects of a case; unlike here, what the parties expect to do with that dismissed claim once the appeal is completed is not always clear. Too often we are left to guess whether the order under review actually finally disposed of all issues as to all parties in such instances. See, e.g., CPC Int'l, supra, 316 N.J.Super. at 366, 720 A.2d 408. Just as federal litigants are required to provide a statement of appellate jurisdiction, see Federal Rule of Appellate Procedure 28(a)(4), it might prove beneficial to have similar requirements included in our rules.
[8] Chokshi and Pharmachem argue that Grow failed to demonstrate the existence of any trade secrets or proprietary information deserving protection. They asserted this in the trial court, but in light of the judge's interpretation of the settlement agreement, he never reached it. Although we will at times affirm summary judgment on grounds other than those relied upon by a trial judge, Isko v. Planning Bd., Twp. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968); Ellison v. Evergreen Cemetery, 266 N.J.Super. 74, 78, 628 A.2d 793 (App.Div.1993), certif. denied, 142 N.J. 516, 665 A.2d 1109 (1995), we find only, in light of the limits of the record on appeal, that the parties' contentions are too fact-sensitive to permit our independent determination without first receiving the benefit of the trial judge's views. We do not foreclose further consideration of this argument in the trial court following today's judgment.
[9] We observe that if we were to adopt the California approach, it would appear to have no benefit for Pharmachem, which was not a party to the first suit. See Cadence, supra, 127 Cal.Rptr.2d 169, 57 P.3d at 651 (emphasis added) (holding that a claim "for misappropriation of a trade secret arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation," and "[e]ach new misuse or wrongful disclosure is viewed as augmenting a single claim of continuing misappropriation rather than as giving rise to a separate claim"). Pharmachem was not a party to the first suit brought by Grow.
[10] We briefly observe that Grow also argues it was deprived of due process when the trial judge proceeded to determine that Chokshi was entitled to fees pursuant to the settlement agreement. Grow argues that Chokshi did not seek this relief by way of his summary judgment motion and that it was inappropriate for the judge to make such a ruling. It is true we have refused to "condone a procedure whereby a judge sua sponte, without notice to a party, resorts to a `shortcut' for the purpose of `good administration' and circumvents the basic requirements of notice and opportunity to be heard." Klier v. Sordoni Skanska Constr. Co., 337 N.J.Super. 76, 84-85, 766 A.2d 761 (App.Div.2001). However, we are not entirely convinced that this principle has application here. Grow can hardly complain that the judge determined its liability to Chokshi when Grow moved for a determination that it was not liable to Chokshi. In any event, we need not decide that point because the matter has been fully briefed in this court, there are no disputed facts on this particular aspect, and our review is de novo; as a result, any alleged prejudice to Grow emanating from the trial judge's ruling on this point has been eliminated, even were we to assume the judge acted precipitously.
[11] The trial judge's determination that Grow post a bond of $650,000 to answer for Chokshi's future claim for fees reveals what the judge believed approximated the fees that had been reasonably incurred on Chokshi's behalf. It is obvious that many individuals would not be able to sustain such a defense for long without assistance; the rendering of that assistance should not be a basis for ultimately rejecting an otherwise legitimate claim for fees at the case's conclusion.
[12] We assume from the title of this provision ("Who Is Bound") that it was intended to define the scope of parties who were obligated by, and entitled to enjoy the benefits of, the settlement agreement. The provision states:

Grow and Releasees acknowledge they are bound by this Agreement as well as anyone who succeeds to their rights and responsibilities, such as their heirs, executors, personal legal representatives, assigns and successors. This agreement is made for the parties' benefit and all who succeed to their rights, including personal and legal representatives, assigns and successors.