**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0880-22

ALPHA REALITIES, LLC,

    Plaintiff-Appellant,

v.

KELSEY JACKSON and
KIMBERLY JACKSON,

    Defendants-Respondents.

_____

Submitted December 4, 2023 – Decided April 1, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2669-21.

George N. Polis, attorney for appellant.

Law Offices of Victor M. Saul, LLC, attorneys for respondents (Victor M. Saul, on the brief).

PER CURIAM

    Plaintiff Alpha Realties, LLC (Alpha) appeals from the October 7, 2022

order of the Law Division denying its motion for summary judgment, granting

the cross-motion for summary judgment of defendants Kelsey Jackson and Kimberly Jackson, and directing Alpha to release to defendants the $22,500 deposit they placed in escrow pursuant to a contract for the purchase of real property. We affirm.

I.

On April 16, 2021, Alpha and defendants executed a contract for the sale of a parcel in Egg Harbor Township. Defendants agreed to pay $370,000 for the property. Pursuant to the contract, they placed a $22,500 deposit with an escrow agent.

The contract contained a clause making the agreement to purchase the property contingent on defendants obtaining a $300,000 written mortgage loan commitment from a lender with terms at least as favorable as those detailed in the contract. The contract also contained the following clauses, in which defendants are referred to as "Buyer" and Alpha is referred to as "Seller":

> The written commitment of the lender must be obtained by Buyer by May 30, 2021, unless the Seller, in writing prior to such date, grants an extension of time for obtaining the written commitment. A copy of the written commitment must be delivered to the Seller promptly upon receipt by Buyer.
>
> . . . .

A-0880-22

> If the Buyer does not receive and deliver to Seller the required written commitment by May 30, 2021, or any agreed upon extended date, this Agreement may be cancelled by Buyer upon written notice to Seller. In the event of such cancellation, the remaining amount of the Deposit shall be returned to Buyer, and Buyer and Seller shall have no further rights or obligations to one another.

Defendants applied for a $300,000 mortgage loan prior to executing the contract. On April 2, 2021, also prior to execution of the contract, the bank denied defendants' application because their income could not be verified. Defendants reapplied for the loan at the same bank using their tax returns as proof of their income.

As of May 30, 2021, defendants had not obtained a written mortgage loan commitment. They did not, however, cancel the contract. According to defendants, they contacted Alpha's real estate broker prior to May 30, 2021, to explain that they needed more time to obtain a mortgage commitment. Alpha denied having received that message and argues that, pursuant to the terms of the contract, its real estate broker was not a proper party to receive notice of defendants' failure to obtain a mortgage commitment. Even so, after May 30, 2021, passed without defendants producing a written mortgage commitment, Alpha took no action to terminate the contract and issued no written

 A-0880-22

communication to defendants regarding their failure to produce a mortgage commitment.

On August 6, 2021, the bank again denied defendants' application. Because they were unable to secure a mortgage commitment, defendants instructed their attorney to cancel the contract. On August 10, 2021, defendants' counsel informed Alpha's counsel that in light of defendants' inability to secure a mortgage commitment "the contract is null and void." He requested Alpha release the deposit to defendants.

Alpha refused to release the deposit. It instead informed defendants that the August 10, 2021 mortgage denial notification constituted a breach of contract and demanded defendants authorize the release of the deposit to Alpha. Alpha's demand for release of the deposit was based on the following clause in the contract:

> Should Buyer default hereunder, Seller's sole remedy shall be to retain the Deposit as liquidated damages. The parties acknowledge that in the event Buyer defaults, it may be difficult to determine the extent of Seller's damages and that $22,500 represents a reasonable estimate of the damages that Seller will incur.

Alpha subsequently filed a complaint in the Law Division alleging breach of contract and breach of the covenant of good faith and fair dealing by

defendants. Alpha demanded release of the deposit to it, along with incidental and consequential damages, and attorney's fees and costs.

Defendants filed a counterclaim alleging breach of contract and breach of the covenant of good faith and fair dealing by Alpha. Defendants demanded release of the deposit to them, damages, and attorney's fees and costs.

After discovery, the parties moved for summary judgment. Alpha argued that because defendants did not cancel the contract by May 30, 2021, they forfeited their rights under the mortgage contingency clause and were required to fulfill the contract whether or not they obtained a mortgage. Defendants argued that they did not breach the contract because they applied for a mortgage commitment in good faith and canceled the contract promptly after their application was rejected. Relying on a clause in the contract stating that "[f]ailure of Buyer or Seller to insist upon or to enforce any of their rights hereunder shall not constitute a waiver thereof[,]" defendants argued that they did not waive the mortgage contingency clause when they failed to cancel the contract after the May 30, 2021 deadline passed without obtaining a mortgage commitment.

On October 7, 2022, the trial court issued an oral opinion denying Alpha's motion for summary judgment, granting defendants' cross-motion for summary

judgment, and ordering release of the deposit to defendants. The court found that there were no genuine issues of material fact. In addition, the court found that the operative provisions of the contract were not ambiguous and that the agreement contained no provision stating that if defendants did not cancel the contract by May 30, 2021, they waived the mortgage contingency clause or the right to recover the deposit.

The court found that the record established that after May 30, 2021, defendants' mortgage application was pending and both parties operated with the knowledge that defendants were endeavoring to obtain a mortgage commitment. Thus, the court concluded, the mortgage commitment clause remained in effect after May 30, 2021, and defendants canceled the contract pursuant to that clause on August 10, 2021, by promptly notifying Alpha of the denial of their application, entitling them to the return of the deposit. An October 7, 2022 order memorializes the trial court's decision.

This appeal followed. Alpha argues that the trial court misinterpreted the mortgage contingency clause and effectively rendered the May 30, 2021 date established in that provision meaningless.[1] Defendants argue that the trial court

_____

[1] On November 4, 2022, the trial court entered an order denying Alpha's motion for a stay of the October 7, 2022 order. Although Alpha's brief states that it is

correctly interpreted the contract, which contains no provision stating that a failure by defendants to cancel the contract by May 30, 2021, waives the mortgage contingency clause or their right to return of the deposit.

## II.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).

challenging the November 4, 2022 order, its notice of appeal and case information statement do not mention the November 4, 2022 order. We do not consider judgments or orders not identified in the notice of appeal. See R. 2:5-1(f)(2)(ii) (stating that a notice of appeal "shall . . . designate the judgment, decision, action, or rule, or part thereof appealed from"); Fusco v. Bd. of Educ., 349 N.J. Super. 455, 461-62 (App. Div. 2002) (stating that appellate review pertains only to judgments or orders specified in the notice of appeal). In addition, because Alpha made no substantive arguments with respect to the November 4, 2022 order, even if it had noted the order on its notice of appeal, its challenge to that order would be considered waived. "[A]n issue not briefed is deemed waived." Pressler and Verneiro, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024); Telebright Corp. v. Dir., Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).

"Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  We do not defer to the trial court's legal analysis or statutory interpretation.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Our review of the court's interpretation and construction of a contract is de novo.  Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014).  Our task is to "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain."  Celanese Ltd. v. Essex Cty. Imp. Auth., 404 N.J. Super. 514, 528 (App. Div. 2009).  "Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language."  Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017).  "[U]nambiguous contracts are to be enforced as written . . . ."  Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008).

We have carefully reviewed the record in light of these principles and agree with the trial court's conclusion that defendants complied with the

mortgage contingency clause when they canceled the contract on August 10, 2021, entitling them to the return of the deposit. The mortgage contingency clause unambiguously provides that if defendants do not obtain a written mortgage commitment by May 30, 2021, they may cancel the contract. The clause does not state that notice of the cancelation must be given by a particular date. At the time that the contract was executed, defendants' application for a mortgage was pending. The application remained pending until it was denied on August 6, 2021, and defendants promptly canceled the contract thereafter. Nothing in the contract suggests that once May 30, 2021, passed without a written mortgage commitment having been issued to defendants, they forfeited their right to terminate the contract and recover their deposit if their pending application was denied. Nor does the record contain any evidence that after May 30, 2021, passed without receipt of defendants' written mortgage commitment Alpha took the position that defendants were contractually obligated to fulfill the contract whether or not their pending mortgage application was granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0880-22